The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Monte R. YOUNG, Defendant–Appellant.

No. 93SA28.

Supreme Court of Colorado,
En Banc.

Sept. 27, 1993.

Rehearing Denied Oct. 4, 1993.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., and Patrick E. Meyers, Sp. Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, Colorado State Public Defender, and Joan E. Mounteer, Deputy State Public Defender, Denver, for defendant-appellant.

Justice KIRSHBAUM delivered the Opinion of the Court.

Defendant, Monte Ryan Young, appeals his conviction of escape, in violation of section 18–8–210.1, 8B C.R.S. (1993 Supp.).[1] Young asserts that the trial court erred in rejecting his motion to dismiss the proceedings because, as applied,[2] the statute violates equal protection and due process guarantees of the United States and Colorado Constitutions. We affirm.

I

On April 17, 1990, Young was adjudicated a delinquent child[3] in the Jefferson County District Court based on his admission to allegations in a petition in delinquency of conduct which, if performed by an adult, constituted the offense of second degree burglary.[4] Young was born on August 22, 1972. After a dispositional hearing held on July 11, 1990, he was placed on probation for a period of two years.

On May 15, 1990, a petition in delinquency was filed against Young alleging conduct which, if performed by an adult, constituted the offenses of possession of burglary tools[5] and possession of drug paraphernalia.[6] On July 25, 1990, another petition in delinquency was filed against Young alleging conduct which, if performed by an adult, constituted the offenses of second degree burglary[7] and theft.[8] On October 9, 1990, based on Young's admission to the allegations con-

---

1. This court accepted jurisdiction from the court of appeals pursuant to § 13–4–110(1)(a), 6A C.R.S. (1987).

2. Although Young initially challenged the constitutionality of the statute on its face, he later informed the trial court that he was challenging only its applicability to him.

3. See §§ 19–3–101, 102, 8B C.R.S. (1986).

4. § 18–4–203, 8B C.R.S. (1986).

5. § 18–4–205, 8B C.R.S. (1986).

6. § 12–22–504, 5A C.R.S. (1991) (repealed, Ch. 71, sec. 25, 1992 Colo.Sess.Laws 324, 393).

7. See supra n. 4.

8. § 18–4–401, 8B C.R.S. (1986 & 1990 Supp.).

tained in the May 15, 1990, petition and to the allegations in the July 25, 1990, petition alleging conduct constituting second degree burglary, the trial court again adjudicated Young to be a delinquent child. On December 12, 1990, at which time Young was eighteen years of age, the trial court· sentenced him to confinement in the Jefferson County Jail for a period of one year, retroactive to September 18, 1990.

Young was subsequently assigned to a work-release facility located in Lakewood, Colorado. On June 22, 1991, he left the facility without authorization. He was arrested on July 22, 1991, and charged with the offense of escape, in violation of sections 18–8–208(2) and 18–8–210.1, 8B C.R.S. (1993 Supp.), a class three felony.

Prior to trial, Young filed a motion seeking a declaration that section 18–8–210.1 violates equal protection and due process guarantees of the United States and Colorado Constitutions because it permits the imposition of disparate sentences on two similarly situated classes of offenders: persons incarcerated for felony convictions "with long possible sentences, and persons [incarcerated] for juvenile 'felony' adjudications for which the maximum sentence is equivalent to a misdemeanor." The trial court denied Young's motion and subsequently found him guilty of the offense of escape. On January 27, 1992, the trial court entered its judgment of conviction and sentenced Young to five years of intensive supervised probation.

## II

### A

Young first contends that section 18–8–210.1, 8B C.R.S. (1993 Supp.), creates two classes of offenders; that all persons in such class are similarly situated; and that as applied to him the statute violates federal and state constitutional guarantees of equal protection of the law by subjecting one of the classes to more severe sanctions than may be imposed on the other class. We reject these arguments.

The equal protection guarantees of the Fourteenth Amendment to the United States Constitution and of the Colorado Constitution [9] require like treatment of persons who are similarly situated. *Clark v. Jeter*, 486 U.S. 456, 108 S.Ct. 1910, 100 L.Ed.2d 465 (1988); *New York City Transit Auth. v. Beazer*, 440 U.S. 568, 99 S.Ct. 1355, 59 L.Ed.2d 587 (1979); *Harris v. The Ark*, 810 P.2d 226 (Colo.1991); *Bath v. Colorado Dep't of Rev., Motor Vehicle Div.*, 758 P.2d 1381 (Colo.1988); *Tassian v. People*, 731 P.2d 672 (Colo.1987); *Board of County Comm'rs v. Flickinger*, 687 P.2d 975 (Colo.1984); *People v. Marcy*, 628 P.2d 69 (Colo.1981). "[T]o subject a law to any form of review under the equal protection guarantee, one must be able to demonstrate that the law classifies persons in some manner." John E. Nowak et al., *Constitutional Law* 600 (2d ed. 1983). A threshold question in an equal protection challenge, therefore, is whether the classes created by a statute are similarly situated. *Beazer*, 440 U.S. at 587–88, 99 S.Ct. at 1366–67; *The Ark*, 810 P.2d at 230; *Flickinger*, 687 P.2d at 982. If no such classification exists, the equal protection challenge must fail. *Bath*, 758 P.2d at 1385; *People, In re C.B.*, 740 P.2d 11, 17–18 (Colo.1987); *Flickinger*, 687 P.2d at 982; *Heninger v. Charnes*, 200 Colo. at 199, 613 P.2d at 887.

In the criminal law context, equal protection prohibits punishment of identical criminal conduct with disparate penalties. Thus, "[i]t is only when 'the *same conduct* is proscribed in two statutes, and *different criminal sanctions* apply, that problems arise under equal protection.'" *People v. Velasquez*, 666 P.2d 567, 569 (Colo.1983) (quoting *People v. Taggart*, 621 P.2d 1375, 1382 (Colo.1981) (emphasis added) (quoting *People v. Czajkowski*, 193 Colo. 352, 356, 568 P.2d 23, 25 (1977)), appeal dismissed by

---

**9.** The right to equal protection of the law finds support in the due process clause of the Colorado Constitution. Colo. Const. art. II, § 25. *Bath v. Colorado Dep't of Rev., Motor Vehicle Div.*, 758 P.2d 1381, 1385 (Colo.1988); *DeScala*

*v. Colorado Dep't of Rev., Motor Vehicle Div.*, 667 P.2d 1360, 1363 n. 5 (Colo.1983); *Lujan v. Colorado State Bd. of Educ.*, 649 P.2d 1005, 1014 (Colo.1982); *Heninger v. Charnes*, 200 Colo. 194, 197 n. 3, 613 P.2d 884, 886 n. 3 (1980).

*Velasquez v. Colorado,* 465 U.S. 1001, 104 S.Ct. 989, 79 L.Ed.2d 223 (1984).

█ Section 18–8–210.1 states as follows:

**Persons in custody or confinement— juvenile offenders.** For the purposes of this part 2, any reference to custody, confinement, charged with, held for, convicted of, a felony, misdemeanor, or petty offense shall be deemed to include a juvenile who is detained for the commission of an act which would constitute such a felony, misdemeanor, or petty offense if committed by an adult or who is the subject of a petition filed pursuant to article 2 of title 19, C.R.S., alleging the commission of such a delinquent act or a juvenile who has been adjudicated a juvenile delinquent as provided for in article 2 of title 19, C.R.S., for an act which would constitute a felony, misdemeanor, or petty offense if committed by an adult.

§ 18–8–210.1, 8B C.R.S. (1993 Supp.). Young argues that section 18–8–210.1 creates two classes of similarly situated individuals: (1) juveniles subject to maximum punishments of two years' confinement in a county jail for acts which, if committed by adults, would constitute felonies; and (2) adult offenders subject to maximum sentences of two years in a county jail for committing class one misdemeanor offenses. Young maintains that, as a member of the former class, he is unconstitutionally subject to a more severe sentence for escape than are members of the latter class.

Contrary to Young's argument, section 18–8–210.1 does not create two classes of similarly situated persons. The statute applies to juvenile offenders who have been detained for the "commission of an act which would constitute . . . a felony, misdemeanor, or petty offense if committed by an adult. . . ." § 18–8–210.1, 8B C.R.S. (1993 Supp.). The statute does not by its terms apply to adults convicted of misdemeanor offenses.

Young suggests that in effect the statute creates the two classes he describes. We therefore must consider other relevant statutes to determine if, in combination with section 18–8–210.1, the General Assembly has in effect proscribed the same criminal conduct for which different criminal sanctions apply. *See, e.g., People v. Rickstrew,* 775 P.2d 570 (Colo.1989); *People v. Jefferson,* 748 P.2d 1223 (Colo.1988).

Class one misdemeanor offenses punishable by a maximum sentence of two years in the county jail, *see* § 18–1–106, 8B C.R.S. (1993 Supp.), include such offenses as assault in the third degree, § 18–3–204, 8B C.R.S. (1986); cruelty to or neglect of animals, § 18–9–202, 8B C.R.S. (1986 & 1993 Supp.); jury tampering, § 18–8–609, 8B C.R.S. (1986 & 1993 Supp.); criminal simulations, § 18–5–110, 8B C.R.S. (1986 & 1993 Supp.); and possession of contraband in the second degree, § 18–8–204.2, 8B C.R.S. (1986). The conduct that resulted in Young's adjudication as a juvenile delinquent consisted of acts which, if committed by an adult, would constitute offenses of second degree burglary of a dwelling, § 18–4–203, 8B C.R.S. (1986), and possession of burglary tools, § 18–4–205, 8B C.R.S. (1986). The offense of second degree burglary of a dwelling is a class three felony punishable by a sentence of from four to sixteen years in the Department of Corrections. This brief comparison between the two classes allegedly created by the statute in question illustrates that the conduct for which Young was adjudicated a delinquent is not substantially similar to the conduct of adults categorized as class one misdemeanor offenders.

This case does not present a situation where the same criminal conduct is punishable by different criminal sanctions. The only similarity between Young and persons convicted of class one misdemeanor offenses is that the applicable maximum penalties for both are identical. Young, however, was adjudicated a delinquent in a juvenile proceeding for conduct which, if committed by an adult, would constitute felonies. The members of the allegedly comparable class are adults convicted of conduct constituting misdemeanor offenses. The comparative conduct is disparate, not similar. Accordingly, section 18–8–210.1 does not in effect create the two

classes suggested by Young and therefore does not violate equal protection guarantees of the United States or Colorado Constitutions.

### B

Young also argues that section 18–8–210.1 violates due process guarantees of the Fourteenth Amendment to the United States Constitution and article II, section 25, of the Colorado Constitution. He contends that section 18–8–210.1 is fundamentally unfair because it imposes a more severe sanction on an escapee initially confined as the result of a juvenile delinquency adjudication than is imposed on an escapee initially convicted of committing a class one misdemeanor offense. He asserts that this legislative decision is not supported by a compelling state interest and is not rationally related to any legitimate governmental purpose. We reject these arguments.

■■■ The due process clauses of the United States and Colorado Constitutions guarantee that no person shall be deprived of liberty without due process of law. When a statute infringes on some fundamental liberty or property interest, the state must prove that the challenged legislation is necessary to promote some compelling governmental interest. *Ferguson v. People*, 824 P.2d 803, 807 (Colo.1992); *People in re J.M.*, 768 P.2d 219, 221 (Colo. 1989); *People v. Becker*, 759 P.2d 26, 29 (Colo.1988). However when no fundamental right is implicated, the legislation is subject to evaluation for substantive due process purposes pursuant to the rational basis test, requiring the state to demonstrate that the legislation bears some reasonable relationship to a legitimate governmental interest. *Ferguson*, 824 P.2d 803, 808; *Willer v. City of Thornton*, 817 P.2d 514, 519 (Colo.1991); *People v. Lewis*, 745 P.2d 668, 670–71 (Colo.1987).

■■■ Young's assertion that his incarceration under section 18–8–210.1 deprives him of a fundamental right is untenable. While he was confined because of his adjudication as a delinquent, he was convicted and sentenced here as an adult escapee.

His liberty interest is not equivalent to that of a juvenile. An adult offender has no fundamental liberty interest in freedom from incarceration. *See, e.g., Bell v. Wolfish*, 441 U.S. 520, 533–35, 99 S.Ct. 1861, 1870–72, 60 L.Ed.2d 447 (1979); *Gerstein v. Pugh*, 420 U.S. 103, 114, 95 S.Ct. 854, 863, 43 L.Ed.2d 54 (1975); *Stack v. Boyle*, 342 U.S. 1, 4–5, 72 S.Ct. 1, 3–4, 96 L.Ed. 3 (1951); *United States v. Abrahams*, 575 F.2d 3, 5 (1st Cir.1978). There is no basis here for application of the compelling governmental interest test.

We have previously applied the rational relationship test in rejecting an equal protection challenge to the predecessor of section 18–8–208, 8B C.R.S. (1986). *People v. McKnight*, 626 P.2d 678, 683–84 (Colo. 1981). In analyzing section 18–8–208, we determined that:

> [T]he law has long recognized a relation between punishment for escape and the offense for which the prisoner was held at the time of the escape, and the courts have approved statutes which provide for increasingly severe punishments for escape by those inmates serving sentences for more grievous crimes.

*Id.* at 683–84, citing *Pennsylvania v. Ashe*, 302 U.S. 51, 58 S.Ct. 59, 82 L.Ed. 43 (1937). We further found that a number of considerations rationally justified the classification scheme adopted by the General Assembly, including the legislators' reasonable belief that:

> [P]ersons convicted of more grievous crimes present a greater threat to society requiring that a greater effort be made to deter their escape, and that persons convicted of more grievous crimes are generally sentenced to longer prison terms, increasing their motive to escape and requiring greater penalties to help deter such escapes.

*McKnight*, 626 P.2d at 684.

Young argues that his custody is not rationally related to the rehabilitative purposes and requirements of the Children's Code, under which he was originally adjudicated a juvenile delinquent. However, as we have observed, his conviction resulted from his conduct as an adult. The fact that his initial incarceration resulted from

an adjudication pursuant to the Children's Code is not relevant.

In our view, the legislative decision to incarcerate an adult who escapes from confinement imposed as the result of an adjudication of delinquency based on the gravity of the escapee's conduct committed as a juvenile does not offend due process guarantees. Young's conduct as a juvenile was sufficiently grave to warrant conviction for serious felonies had such conduct been committed by an adult. The application of section 18–8–210.1 to Young is related to the gravity of his earlier conduct, not to his earlier status as a juvenile. The statute is in part designed to deter escapes by persons who have previously engaged in conduct sufficiently grave to be classified as felonious. The penalty, in our view, is reasonably related to the legitimate purpose of providing relatively severe punishments for adult escapees confined because of grave conduct committed as juveniles.

### III

For the foregoing reasons, we conclude that, as applied, section 18–8–210.1 does not violate Young's rights to equal protection of the law or due process of law under the United States Constitution and the Colorado Constitutions. Accordingly, we affirm the judgment of the trial court.