The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Bradley H. OGLETHORPE,
Defendant–Appellant.

No. 02CA0347.

Colorado Court of Appeals,
Div. III.

June 19, 2003.

As Modified on Denial of Rehearing
Aug. 14, 2003.

Certiorari Denied April 12, 2004.

Ken Salazar, Attorney General, Matthew S. Holman, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Mark G. Walta, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge MARQUEZ.

Defendant, Bradley H. Oglethorpe, appeals the sentence imposed following his plea of guilty to one count of enticement of a child. He also appeals the trial court's order adopting the prosecution's response to his motion attacking the constitutionality of the Colorado Sex Offender Lifetime Supervision Act of 1998, § 18–1.3–1001, et seq., C.R.S.2002(Act). We affirm.

Defendant pleaded guilty to enticement of a child in violation of § 18–3–305(1), C.R.S. 2002, a class four felony. The trial court rejected his motion to refuse application of the Act on grounds that it was unconstitutional. It then found extraordinary aggravating circumstances and sentenced him to the Department of Corrections to an indeterminate sentence of twelve years to life.

## I. Findings

We reject defendant's contention that the trial court's wholesale adoption, without any analysis, of the prosecution's response to his motion attacking the constitutionality of the Act frustrates meaningful appellate review of the preserved constitutional issues presented by this case.

Although an appellate court may scrutinize findings when they have been

adopted from those proposed by a litigant, the trial court's use of such findings is not erroneous if they are supported by competent evidence in the record. *Rocky Mountain Health Maint. Org., Inc. v. Colo. Dep't of Health Care Policy & Fin.,* 54 P.3d 913 (Colo.App.2001).

■ Here, we may assume that the trial court examined the proposed findings and agreed that they correctly stated the facts as the court found them to be; otherwise, the court would not have adopted them. *See Uptime Corp. v. Colo. Research Corp.,* 161 Colo. 87, 420 P.2d 232 (1966); *Olson v. State Bd. for Cmty. Colls. & Occupational Educ.,* 759 P.2d 829 (Colo.App.1988).

## II. The Act

Defendant contends the Act is unconstitutional on several grounds, both as applied and on its face. We disagree.

■ Statutes are presumed to be constitutional, and a party challenging a statute's validity bears the burden of establishing unconstitutionality beyond a reasonable doubt. *People v. Hickman,* 988 P.2d 628 (Colo.1999).

### A. Due Process

We reject defendant's contention that the Act violates procedural due process because it does not provide an opportunity to be heard on the facts justifying a sentence of up to the defendant's natural life and an adequate continuing opportunity to be heard after the indeterminate sentence is imposed.

#### 1.

■ Procedural due process involves the manner in which state action occurs and requires notice and a fair opportunity to be heard. Due process is a flexible standard, which recognizes that not all situations calling for procedural safeguards require the same procedure. *People v. Garlotte,* 958 P.2d 469 (Colo.App.1997).

Relying on *Specht v. Patterson,* 386 U.S. 605, 87 S.Ct. 1209, 18 L.Ed.2d 326 (1967), and *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), defendant argues that he has the right to proof beyond a reasonable doubt and a jury finding that he will likely reoffend. He asserts the General Assembly should not be allowed to presume that all sex offenders will reoffend and therefore require them all, indiscriminately, to serve indeterminate life sentences. We are not persuaded.

In *Specht v. Patterson, supra,* the Supreme Court held that a 1968 Colorado sex offender statute violated due process because it did not give a defendant notice and an opportunity to be heard before the court made a finding justifying imposition of an indeterminate sentence. That statute applied if the court found that a defendant convicted of a specified sex offense, if at large, constituted a threat of bodily harm to members of the public or was an habitual offender and mentally ill.

The Supreme Court in *Apprendi v. New Jersey, supra,* held that any fact, other than the fact of a prior conviction, that increases the penalty for a crime beyond the prescribed statutory maximum for that crime must be submitted to the jury and proved beyond a reasonable doubt.

■ Here, defendant pleaded guilty to a sex offense after being fully advised of the charge, his rights, and the potential sentences, and stating that he understood them. He was asked whether he had any questions and whether he admitted the charge. Defendant asked no questions and admitted his guilt. Thus, he was provided an opportunity to be heard on the sentence to be imposed.

■ Although defendant argues the Act relies on generalized legislative findings to justify indeterminate sentencing in all cases, subject to constitutional limitations it is the prerogative of the General Assembly to define crimes and prescribe punishments. Courts therefore exercise discretion in sentencing only to the extent permitted by statute. *Martinez v. People,* 69 P.3d 1029, 2003 WL 21212123, (Colo.2003); *People v. Black,* 915 P.2d 1257 (Colo.1996). Here, the Act requires the court to give the offender an indeterminate sentence. *See* § 18–1.3–1004, C.R.S.2002; *People v. Smith,* 29 P.3d 347 (Colo.App.2001). Further, as the People note, unlike the 1968 statute and *Apprendi,*

no additional finding beyond the conviction was required before defendant was subject to indeterminate sentencing.

Additionally, defendant complains that the trial court did not afford him sufficient opportunity to develop the record regarding the alleged self-interest of evaluators and availability of treatment. However, he fails to point to any portion of the record indicating he sought such opportunity, and the record fails to show that he has been denied treatment.

Defendant nevertheless asserts that the Act fails to provide an adequate continuing opportunity to be heard on the issue of release after the sentence has been imposed. We reject this argument.

After the minimum period of incarceration imposed is completed, the parole board schedules a hearing to determine whether the sex offender may be released on parole. Section 18–1.3–1006(1)(a), C.R.S.2002. Under that section, the parole board must determine, inter alia, "whether there is a strong and reasonable probability that the person will not thereafter violate the law." If parole is denied, the Act provides for review by the parole board at least once every three years. Section 18–1.3–1006(1)(c), C.R.S.2002. These opportunities satisfy continuing procedural due process requirements. *See People v. Kibel,* 701 P.2d 37 (Colo.1985)(review after six months); *Martinez v. Colo. State Bd. of Parole,* 989 P.2d 256 (Colo.App.1999)(triennial review); *Furnari v. Zavaras,* 914 P.2d 508 (Colo.App.1996).

Moreover, defendant is not currently eligible for parole under the Act. Thus, these arguments are premature, and we will not consider them further. *See People v. Kibel, supra; People v. Strean,* 74 P.3d 387, 2002 WL 31719879 (Colo.App. No. 01CA0685, Dec. 5, 2002).

### 2.

Asserting the Act violates his right to substantive due process, defendant further contends that not only does the Act presume every sex offender is dangerous and likely to reoffend, but it also denies the defendant any opportunity to prove otherwise. We do not agree.

Substantive due process prohibits the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty. It forbids the government from infringing upon certain fundamental liberty interests, no matter what process is afforded, unless the infringement is narrowly tailored to serve a compelling state interest. *People v. Garlotte, supra.*

However, when no fundamental right is implicated, the legislation is subject to evaluation for substantive due process purposes pursuant to the rational basis test. An adult offender has no fundamental liberty interest in freedom from incarceration. *People v. Young,* 859 P.2d 814 (Colo.1993); *see People v. Strean, supra.*

The rational basis test requires the state to demonstrate that the legislation bears some reasonable relationship to a legitimate governmental interest. *People v. Young, supra.*

Here, the General Assembly has found the majority of persons who commit sex offenses, if incarcerated or supervised without treatment, will continue to present a danger to the public when released from incarceration or supervision. It has declared that a program under which sex offenders may receive treatment and supervision for the rest of their lives, if necessary, is necessary for the safety, health, and welfare of the state. *See* § 18–1.3–1001, C.R.S.2002. Thus, the Act serves the legitimate governmental interests of protecting the public from untreated sex offenders and of rehabilitating and treating those offenders. *See People v. Kibel, supra.*

Consequently, the Act does not violate defendant's right to substantive due process.

### B. Equal Protection

Nor do we agree with defendant's contention that the Act violates equal protection because it punishes all sex offenders, regardless of the conduct underlying the offense of conviction and even if they are nonviolent

first-time offenders, more severely than persons who commit crimes with graver consequences, such as second degree murder or first degree assault.

The General Assembly is entitled to provide for more severe penalties for different crimes, so long as the classification of crimes reflects substantial differences in the proscribed conduct that have a reasonable relationship to the public purpose sought to be achieved. *People v. Deskins*, 927 P.2d 368 (Colo.1996); *see People v. Black, supra.*

The threshold question in any equal protection challenge is whether the persons allegedly subject to disparate treatment are in fact similarly situated. An equal protection challenge must fail if persons alleging disparate treatment are not similarly situated. *People v. Black, supra.* It is only when the same conduct is proscribed in two statutes, and different criminal sanctions apply, that equal protection problems arise. *People v. Young, supra.*

Because defendant does not demonstrate that he was treated any differently from any other defendant convicted under similar circumstances, he lacks standing to raise an equal protection argument. *See People v. Fuller*, 791 P.2d 702 (Colo.1990); *People v. Smith, supra.*

Even if we assume defendant has standing, sex offenders and nonsex offenders are subject to different parole laws and are not similarly situated for purposes of parole. *See People v. Walker*, 75 P.3d 722, 2002 WL 31477936 (Colo.App. No. 01CA2199, Nov. 7, 2002).

Thus, defendant is only similarly situated with defendants who commit the same or similar acts. *See People v. Friesen*, 45 P.3d 784 (Colo.App.2001); *see also People v. Strean, supra* (rejecting argument that 'nonviolent sex offenses were identical to those of a violent sex offender and that punishments were not the same).

### C.   Cruel and Unusual Punishment

Defendant further contends the Act violates the constitutional provisions against cruel and unusual punishment because the life sentence imposed in most cases will be disproportionate to the crime. We are not persuaded.

The constitutional prohibition against cruel and unusual punishment does not require strict proportionality between the crimes committed and the sentence imposed. Instead, it forbids only extreme sentences that are "grossly disproportionate" to the crime. *People v. Mershon*, 874 P.2d 1025 (Colo.1994); *People v. Campbell*, 58 P.3d 1080 (Colo.App.2002)(*cert. granted* Nov. 25, 2002).

When a defendant asserts that a sentence is grossly disproportionate to the crime committed, a proportionality review is undertaken. An abbreviated proportionality review, in which only the gravity of the crime and the sentence imposed are considered, is all that is required when the offense is a serious one. Great deference must be afforded to the General Assembly's authority to establish the punishments for crimes. *People v. Mandez*, 997 P.2d 1254 (Colo.App. 1999).

Here, defendant argues only that his sentence is disproportionate when compared to class one felonies. However, defendant admitted sexually assaulting a four-year-old girl. He enticed her, along with her little brother, to leave the play area of their apartment complex and follow him to a secluded area where the assault took place. The trial court, in finding extraordinary aggravating circumstances, noted the appalling nature of the crime. Testimony indicated the victim and her family were suffering lingering effects from the incident. Thus, we conclude defendant's sentence is not disproportionate to the offense.

In view of this disposition and because it would entail speculation, we need not determine whether a life sentence in other cases would be disproportionate to the crime.

### D.   Separation of Powers

Defendant next contends that the Act violates the separation of powers doctrine because criminal sentencing is a matter for the legislative and judicial branches, but the Act

vests undue power in an executive body regarding the actual length of an offender's incarceration. Further, he argues the body that determines the actual length of an offender's sentence is not only a quasi-law enforcement agency, but also is uniquely subject to political pressures. We reject these contentions.

The separation of powers doctrine prohibits the exercise by one branch of government of the powers that the constitution vests in another branch of government. With respect to sentencing, the General Assembly has the inherent power to prescribe punishment for crimes and to limit the court's sentencing authority. The imposition of a sentence is a judicial function. Once a sentence is imposed, the executive branch is responsible for carrying out the court's mandate. *People v. Barth*, 981 P.2d 1102 (Colo. App.1999); *see People v. Anaya*, 894 P.2d 28 (Colo.App.1994).

The decision to grant parole or absolute release to an inmate incarcerated for an indeterminate sentence under the Act is vested within the sound discretion of the state parole board. *See Christensen v. People*, 869 P.2d 1256 (Colo.1994)(construing earlier version of the Act). The parole board's discretion is plenary and is not subject to judicial review. *White v. People*, 866 P.2d 1371 (Colo.1994).

To the extent defendant argues that the body that determines the length of his sentence is subject to political pressures, that argument was considered and rejected in *People v. Strean, supra.* We find that analysis persuasive and apply it here.

### E. Privilege Against Self–Incrimination

We also are not persuaded by defendant's contention that the Act's requirement that offenders must demonstrate therapeutic progress before being considered for release to parole is nothing less than a legislative attempt to require that sex offenders not only admit guilt of the crimes of which they were convicted, but also disclose other potentially prosecutable misconduct. According to defendant, this requirement violates the constitutional privilege against self-incrimination.

We first note that defendant here pleaded guilty and admitted committing the offense. To that extent, any constitutional privilege against self-incrimination has been waived.

We also note that a similar argument was considered and rejected by the Supreme Court in *McKune v. Lile*, 536 U.S. 24, 122 S.Ct. 2017, 153 L.Ed.2d 47 (2002)(imprisoned defendant refused to participate in a sexual abuse treatment program on grounds that the required disclosures would violate his Fifth Amendment privileges against self-incrimination; refusal to participate would result in loss of certain privileges in prison and transfer to a maximum security unit).

Moreover, defendant does not contend that he has participated in treatment where he has been required to disclose other potentially prosecutable misconduct. Consequently, he does not have standing to assert this claim. *See People v. Lybarger*, 700 P.2d 910 (Colo.1985)(court should not decide constitutional issue until actually raised).

### III. Sentence

Finally, defendant contends the trial court abused its discretion in imposing an indeterminate life sentence, the minimum term of which fell within the aggravated range for class four felonies. We are not persuaded.

Under § 18–1.3–401(1)(a)(V)(A), C.R.S. 2002, the presumptive range for a class four felony is two to six years imprisonment. Because defendant pled guilty to enticement of a child, a sex offense under § 18-1.3-1003(5)(a)(VII), C.R.S. 2002, he was subject to sentencing under § 18-1.3-1004 which requires the district court to sentence the offender for an indeterminate term of least the minimum of the presumptive range as specified in § 18-1.3-401 and a maximum of the sex offender's natural life.

Sentencing is discretionary, and to constitute an abuse of discretion, a sentence must be manifestly arbitrary, unreasonable, or unfair. Absent a showing that

the court's wide latitude in sentencing was marred by a clear abuse of discretion, a sentencing decision will not be reversed on appeal. *People v. Harding*, 17 P.3d 183 (Colo.App.2000); *see People v. Fuller, supra.* The trial court is in the best position to fix a sentence that reflects a balance of the relevant considerations. On review, an appellate court must determine whether the sentence is consistent with the nature of the offense, the character of the offender, and the public interest in safety and deterrence. *People v. Vigil*, 718 P.2d 496 (Colo.1986).

Here, the sentence is consistent with defendant's plea bargain, his plea to enticement of a child, his admission of the underlying circumstances supporting his plea, and the sentences available under the Act.

Defendant nevertheless contends the trial court imposed the sentence based on anger. We find no abuse of discretion.

During the sentencing hearing, the trial court described defendant's conduct as "shocking and horrific." In response to defendant's statement that "I'm not a bad person," the trial court stated: "You say you are not a bad person; that's not right, you are. You are the worst of people." It also concluded, despite the psychological report indicating defendant was a moderate to high risk, that defendant was "an exceedingly high risk to the rest of this community."

Because the sentence is supported by the record and authorized by the act, we perceive no abuse of discretion. See *People v. Strean, supra. People v. Apodaca*, 58 P.3d 1126 (Colo.App. 2002); *People v. Smith, supra.*

The sentence and order are affirmed.

Judge ROY and Justice ERICKSON *, concur.