The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
December 13, 2018

## 2018COA172

**No. 16CA0385, *Peo in Int of C.M.D.* — Criminal Law — Sex Offender Registration — Petition for Removal from Registry; Constitutional Law — Eighth Amendment — Cruel and Unusual Punishments — Fourteenth Amendment — Due Process**

In this juvenile sex offender case, a division of the court of appeals holds that the provisions of the Colorado Sex Offender Registration Act, §§ 16-22-103(2)(a) and -113(3)(c), C.R.S. 2018, requiring lifetime sex offender registration for juveniles who have committed more than one sex offense do not violate due process or constitute cruel and unusual punishment as applied to such juveniles.

Court of Appeals No. 16CA0385
Mesa County District Court No. 15JD140
Honorable Thomas M. Deister, Judge
Honorable William T. McNulty, Magistrate

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of C.M.D.,

Juvenile-Appellant.

ORDER AFFIRMED

Division II
Opinion by JUDGE VOGT*
Dailey and Lichtenstein, JJ., concur

Announced December 13, 2018

Cynthia H. Coffman, Attorney General, Joseph G. Michaels, Assistant Attorney General, Denver, Colorado, for Petitioner-Appellee

Megan A. Ring, Colorado State Public Defender, Ryann S. Hardman, Deputy State Public Defender, Denver, Colorado, for Juvenile-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2018.

¶ 1 C.M.D. was adjudicated delinquent based on an incident involving unlawful sexual contact. At sentencing, he was ordered to register as a sex offender under the Colorado Sex Offender Registration Act (CSORA), §§ 16-22-101 to -115, C.R.S. 2018. Because C.M.D. had a previous adjudication for unlawful sexual contact, the magistrate was statutorily precluded from waiving the registration requirement, and C.M.D. is not eligible to petition to discontinue the registration.

¶ 2 On appeal, C.M.D. contends that, as applied to him and similarly situated juveniles, the CSORA violates constitutional prohibitions against cruel and unusual punishment and constitutional due process rights. Under the circumstances of this case, we disagree. We therefore affirm the order requiring C.M.D. to register as a sex offender.

## I. Background

¶ 3 At the time of the incident giving rise to the order, C.M.D. was serving a sentence in the Department of Youth Corrections (DYC) based on prior adjudications, one of which was also for unlawful sexual contact. Although the incident was reported to have occurred when C.M.D. was seventeen and a half years old, the

1

petition in delinquency was not filed until one year later, when C.M.D. was eighteen and a half.

¶ 4     The petition alleged that C.M.D. had committed unlawful sexual contact against another DYC resident, who was then seventeen. C.M.D. had reported the incident to his case manager, stating that he "grabbed a girl's ass" and that he did it because he "felt aroused and couldn't help himself." The victim told law enforcement personnel that she had been in a transport van with C.M.D. and another girl on the way to court appearances. In the elevator at the courthouse, she felt C.M.D.'s hand brush her bottom, but was not sure if it was intentional. She then said that

> [w]hen they were leaving court getting ready to get back in the transport van, she did not want to sit next to C.M.D. . . . [H]e kept touching her back throughout the drive.
>
> She told him to stop several times and he did not stop. He was only touching her back at this point, but this made her mad and uncomfortable.
>
> When they arrived back at DYC . . . C.M.D. scooted closer to [her], [and] grabbed her butt two times.

¶ 5     The People filed a petition in delinquency alleging that C.M.D. had committed an act which, if committed by an adult, would

constitute misdemeanor unlawful sexual contact under section 18-3-404(1)(a), C.R.S. 2018. In exchange for dismissal of the charge, C.M.D. pleaded guilty to third degree assault, § 18-3-204(1)(a), C.R.S. 2018, with an underlying factual basis of unlawful sexual contact. The court sentenced C.M.D. to up to six months in the custody of the DYC, the sentence to run concurrent with his sentences in four other cases. C.M.D. acknowledged at the plea hearing that he knew he would be required to register as a sex offender.

¶ 6    As noted, this was not C.M.D.'s first adjudication for an offense with an underlying factual basis of unlawful sexual contact. He had previously been adjudicated for sexually assaulting his sister over the course of three to five years, beginning when she was approximately four years old and he was approximately six years old. The conduct giving rise to the adjudication included forced oral sex, digital penetration of the vagina, and attempted penile-vaginal intercourse. At sentencing in this case, the magistrate noted that he had no discretion to decline to impose the sex offender registration requirement, and then commented:

> Even if I'd had discretion, I would feel somewhat conflicted about not requiring [C.M.D.] to register. . . . [C]onsidering some of the factors if I were allowed to under [section 16-22-103(5)(a)], considering that, certainly lifetime registration would seem unfairly punitive under these circumstances.
>
> But, it's not the adjudication for this offense that makes it unfairly – that makes it lifetime. It's the – of course, the existence of the other offense. But, the risk to the community may require that registration. And so, if I had that discretion, I'm not sure that I would actually go – and exercise that discretion.

¶ 7    C.M.D. petitioned for district court review of the magistrate's order, arguing, among other things, that requiring him to register as a sex offender amounted to cruel and unusual punishment. The district court disagreed, citing cases holding that the requirement to register is not punishment, and adding:

> However, even if the requirement to register were punishment, such a requirement here would neither be unfairly punitive nor cruel and unusual because of the Juvenile's prior adjudication for unlawful sexual behavior. With two adjudications for this type of behavior, community safety requires registration. Such conclusion is necessary because the statute specifically permits the exception for only someone who has no prior for this type of behavior.

## II. Cruel and Unusual Punishment

¶ 8     C.M.D. contends that mandatory, lifetime sex offender registration under CSORA violates federal and state constitutional prohibitions against cruel and unusual punishment, as applied to him and similarly situated juveniles.  We disagree.

### A. Standard of Review

¶ 9     We review the constitutionality of a statute de novo.  *See People v. Sabell*, 2018 COA 85, ¶ 46.  Statutes are presumed to be constitutional.  *Qwest Servs. Corp. v. Blood*, 252 P.3d 1071, 1083 (Colo. 2011).  Thus, the burden is on the party challenging a statute to prove that it is unconstitutional beyond a reasonable doubt.  *Id.*; *People v. Dash*, 104 P.3d 286, 290 (Colo. App. 2004).

### B. CSORA

¶ 10    The CSORA provides that "any person who is convicted in the state of Colorado of unlawful sexual behavior or of another offense, the underlying factual basis of which involves unlawful sexual behavior . . . shall be required to register" as a sex offender.  § 16-22-103(2)(a), C.R.S. 2018.  This registration requirement applies equally to adult convictions and to juvenile adjudications based on

the commission of any act that may constitute unlawful sexual behavior.  § 16-22-103(4).

¶ 11    Section 16-22-103(5)(a) permits sentencing courts to exempt offenders from the registration requirement if the court determines that the requirement would be unfairly punitive and that exempting the person would not pose a significant risk to the community. However, this provision applies only if the person was under eighteen at the time of the commission of the offense and had not been previously charged with unlawful sexual behavior.  *Id.*

¶ 12    Additionally, section 16-22-113(1), C.R.S. 2018, outlines circumstances in which offenders may petition the court to discontinue the registration requirement.  However, the option to discontinue registration is not available to persons with more than one conviction or adjudication for unlawful sexual behavior.  § 16-22-113(3)(c); *see People v. Atencio*, 219 P.3d 1080, 1082 (Colo. App. 2009).

¶ 13    As noted, neither of these options was available to C.M.D. because of his previous adjudication for unlawful sexual behavior. Thus, the court was statutorily required to order C.M.D. to register as a sex offender for the rest of his life.

## C. The CSORA Is Not Punishment

¶ 14    The United States and Colorado Constitutions prohibit cruel and unusual punishment. U.S. Const. amend. VIII; Colo. Const. art. II, § 20.

¶ 15    To decide whether this prohibition is implicated, we must first determine whether the challenged requirement is punishment. *See People in Interest of J.O.*, 2015 COA 119, ¶ 21. In making this determination, we initially look to the statute to see whether the legislature intended the requirement to be punishment. *See Smith v. Doe*, 538 U.S. 84, 92 (2003) (legislative intent as expressed in statute supported conclusion that Alaska sex offender registration statute was non-punitive). Where the legislature has clearly stated its intent to create a non-punitive regulatory scheme, "'only the clearest proof' will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." *Id.* at 92 (quoting *Hudson v. United States*, 522 U.S. 93, 100 (1997)).

¶ 16    The CSORA states:

> The general assembly finds that persons convicted of offenses involving unlawful sexual behavior have a reduced expectation of privacy

7

> because of the public's interest in public safety. The general assembly further finds that the public must have access to information concerning persons convicted of offenses involving unlawful sexual behavior that is collected pursuant to this article to allow them to adequately protect themselves and their children from these persons. The general assembly declares, however, that, in making this information available to the public . . . it is not the general assembly's intent that the information be used to inflict retribution or additional punishment on any person convicted of unlawful sexual behavior . . . .

§ 16-22-112(1), C.R.S. 2018.

¶ 17    Consistent with the legislature's stated intent, divisions of this court have uniformly held that sex offender registration is not punishment. *See J.O.*, ¶¶ 21-30; *People v. Carbajal*, 2012 COA 107, ¶ 37; *People v. Sowell*, 327 P.3d 273, 277 (Colo. App. 2011); *People v. Tuffo*, 209 P.3d 1226, 1230 (Colo. App. 2009); *People v. Montaine*, 7 P.3d 1065, 1067 (Colo. App. 1999). Such registration is not part of a defendant's sentence but is instead a collateral civil requirement intended as a public safety measure. *See Carbajal*, ¶ 37; *Montaine*, 7 P.3d at 1067.

¶ 18    Except for *J.O.*, the cited Colorado cases all deal with adult offenders. As C.M.D. correctly points out, a different analysis may

8

be called for if the offender is a juvenile. The Supreme Court has recognized that "children are constitutionally different from adults for purposes of sentencing," *Miller v. Alabama*, 567 U.S. 460, 471 (2012), and it has struck down laws permitting imposition of the death penalty and mandatory life-without-parole sentences for juveniles as violative of the Eighth Amendment. *See id.*

¶ 19   In *J.O.*, the division rejected the juvenile's argument that, under the *Miller* line of cases, the Eighth Amendment prohibits the possibility of lifetime sex offender registration for juveniles. After reviewing Colorado precedent holding that sex offender registration is not punishment, the division concluded that, even as applied to juveniles, such registration does not constitute punishment; therefore, it was unnecessary to address whether registration was cruel and unusual. *J.O.*, ¶ 30. The *J.O.* division also noted that "[m]ost jurisdictions to have addressed this issue continue to hold that sex offender registration for a juvenile is not punitive." *Id.* at ¶ 24.

¶ 20    We agree with the analysis and the result in *J.O.*[1]  We are not

persuaded to reach a different conclusion based on cases from

other jurisdictions cited by C.M.D.  *See, e.g., Doe v. State,* 111 A.3d

1077, 1100 (N.H. 2015) (punitive effects of New Hampshire sex

offender registration system outweighed non-punitive legislative

intent; therefore, retroactive application of sex offender registration

requirements violated prohibition against ex post facto laws as

applied to petitioner); *In re C.P.,* 967 N.E.2d 729, 732 (Ohio 2012)

(statute imposing automatic lifelong registration and notification

requirements on juvenile sex offenders was cruel and unusual

punishment and a violation of due process).

¶ 21    Nor do we agree with C.M.D. that, if we assess the issue under

the intent-effects test of *Kennedy v. Mendoza-Martinez,* 372 U.S.

144, 168 (1963), we would conclude, as the United States District

Court did in *Millard v. Rankin,* 265 F. Supp. 3d 1211 (D. Colo.

---

[1] We do not agree with C.M.D. that *J.O.* is distinguishable because the juvenile in that case could later petition to discontinue registration.  Although the division so stated in distinguishing an Ohio case, *see People in Interest of J.O.,* 2015 COA 119, ¶ 29, it is not entirely clear whether, in light of section 16-22-113(3)(c), C.R.S. 2018, the statement is accurate.  In any event, we decline to depart from the result in *J.O.* on this basis.

2017), that, despite the stated legislative intent, the CSORA is

punitive in effect.

¶ 22    Under the *Kennedy* test, courts are to consider the following:

> Whether the sanction involves an affirmative
> disability or restraint, whether it has
> historically been regarded as a
> punishment, whether it comes into play only
> on a finding of scienter, whether its operation
> will promote the traditional aims of
> punishment — retribution and
> deterrence, whether the behavior to which it
> applies is already a crime, whether an
> alternative purpose to which it may rationally
> be connected is assignable for it, and whether
> it appears excessive in relation to the
> alternative purpose assigned.

*Kennedy*, 372 U.S. at 168 (footnotes omitted).  The Supreme Court

applied this test in *Smith*, 538 U.S. at 92, and concluded that the

Alaska sex offender registration requirement was not punishment.[2]

¶ 23    Applying this test to the CSORA, we also conclude that the

statute is not punitive.  First, the statute itself does not impose an

"affirmative disability or restraint."  *Id.* at 99 (quoting *Kennedy*, 372

---

[2] In *Doe v. State*, 189 P.3d 999, 1019 (Alaska 2008), the Alaska
Supreme Court weighed the *Kennedy* factors and came to a
contrary conclusion, finding that Alaska's sex offender registration
statute was punitive in effect and thus violated state constitutional
ex post facto prohibitions as applied to the adult defendant.

U.S. at 168). Unlike prison, probation, or parole, registration does not limit where offenders may live or where they may work, although local ordinances may do so. *See id.* at 101. Second, as discussed above, sex offender registration has not historically been regarded as a punishment in Colorado. Third, although sex offender registration is required regardless of a finding of scienter, this factor carries "little weight." *Id.* at 105. Fourth, the statute's operation does not "promote the traditional aims of punishment — retribution and deterrence." *Kennedy*, 372 U.S. at 168. Those aims are primarily furthered by imposition of the sentence associated with the offense, not the associated registration requirement. Fifth, although the conduct to which registration applies is already a crime, that crime carries its own punishment; any punishment arising from a failure to register results from a proceeding separate from the original offense. *Smith*, 538 U.S. at 102. Finally, the stated and rational purpose of sex offender registration is to protect the public, and requiring registration is not excessive in light of this purpose.

¶ 24 Although we conclude that the CSORA is not punishment even if analyzed under the *Kennedy* factors, we recognize that the federal

12

court in *Millard,* on which C.M.D. relies, reached a contrary conclusion. In that case, three registered sex offenders testified to specific adverse consequences they had suffered — including forced changes of residence, one man's exclusion from his own children's school, and difficulties in obtaining or maintaining employment — as a result of the registration requirement. The court observed that such evidence of "actual adverse consequences" of sex offender registration was relevant to the plaintiffs' Eighth Amendment claim. 265 F. Supp. 3d at 1222. After acknowledging the non-punitive legislative intent of the CSORA, the court concluded that, based on the testimony, the statute's effects on the three plaintiffs before it were clearly punitive. *Id.* at 1226.

¶ 25    In this case, there is no evidence before us of any such adverse effects on C.M.D. At this point, the effects of registration on C.M.D. remain speculative, and it would be premature for us to base a decision on circumstances that may not in fact occur. *See, e.g., Olivas-Soto v. Indus. Claim Appeals Office,* 143 P.3d 1178, 1180 (Colo. App. 2006) ("Generally, ripeness tests whether an issue is real, immediate, and fit for adjudication. Under that doctrine, adjudication should be withheld for uncertain or contingent future

13

matters that suppose a speculative injury which may never occur.");

*see also People v. Higgins*, 2016 CO 68, ¶ 13 (declining to address contentions that were based on hypothetical fact situations or that would require findings as to facts that had not yet occurred); *People v. Oglethorpe*, 87 P.3d 129, 134 (Colo. App. 2003) (argument regarding release of sex offenders to parole was premature where defendant was not currently eligible for parole).

¶ 26    Under the facts of this case, we are not persuaded to depart from established Colorado precedent holding that the sex offender registration requirement is not punishment. We therefore do not reach the question whether such requirement is cruel or unusual. *See J.O.*, ¶ 30.

¶ 27    In sum, we cannot conclude that requiring lifetime sex offender registration for C.M.D., who has been adjudicated for a previous sex offense, violates constitutional guarantees against cruel and unusual punishment and warrants disregarding the legislature's unequivocally stated concern for public safety.

¶ 28    However, in so concluding, we acknowledge that C.M.D. has cited persuasive studies addressing the debilitating effects of sex offender registration on juveniles and the questionable public safety

value of such registration.  *See* Catherine L. Carpenter, *Throwaway Children: The Tragic Consequences of a False Narrative*, 45 Sw. L. Rev. 461, 489-90 (2016); Amy E. Halbrook, *Juvenile Pariahs*, 65 Hastings L.J. 1, 13 (2013); Elizabeth J. LeTourneau et al., *Effects of Juvenile Sex Offender Registration on Adolescent Well-Being: An Empirical Examination*, 24 Psychol. Pub. Pol'y & L. 105 (Feb. 2018); Nastassia Walsh & Tracy Velazquez, *Registering Harm: The Adam Walsh Act and Juvenile Sex Offender Registration*, The Champion 20 (Dec. 2009); Franklin E. Zimring et al., *Investigating the Continuity of Sex Offending: Evidence from the Second Philadelphia Birth Cohort*, 26 Just. Q. 58, 69-72 (Mar. 2009), https://perma.cc/8MGW-JTFT; Human Rights Watch, *Raised on the Registry, The Irreparable Harm of Placing Children on Sex Offender Registries in the US* (May 2013), https://perma.cc/B3E9-AT5S; MacArthur Foundation, *Juvenile Justice in a Developmental Framework: A 2015 Status Report* 37 (Dec. 2015), https://perma.cc/KSR7-2G2W.  In our view, these studies raise valid policy concerns that should be considered by the legislature.

## III. Due Process

¶ 29    C.M.D. contends that mandatory, lifetime sex offender registration under the CSORA, as applied to him and similarly situated juveniles, violates federal and state constitutional due process protections.  Again, we disagree.

### A.  Standard of Review and Applicable Law

¶ 30    Challenges to the constitutionality of a statute are generally reviewed de novo.  *Hinojos-Mendoza v. People*, 169 P.3d 662, 668 (Colo. 2007).  C.M.D. did not raise this as-applied challenge in the juvenile court.  Although we could therefore decline to consider it, we will, in the interest of judicial economy, briefly address contentions that do not require further factual development.  *See id.* at 667; *People v. Mountjoy*, 2016 COA 86, ¶¶ 36-38 (citing cases explaining why developed record and findings of fact are necessary to permit appellate review of as-applied constitutional challenge).

¶ 31    The Due Process Clauses of the United States and Colorado Constitutions guarantee that no person shall be deprived of life, liberty, or property without due process of law.  U.S. Const. amend. XIV; Colo. Const. art. II, §. 25.  When a statute infringes on a recognized liberty or property interest, the government must prove

16

that the statute is necessary to promote a compelling government interest. *People v. Young*, 859 P.2d 814, 818 (Colo. 1993). Where no fundamental right is implicated, however, the government need only prove that the challenged statute bears a rational relationship to a legitimate government interest. *Id.*

## B. Analysis

¶ 32      C.M.D. argues that the registration requirement deprives juveniles of their "liberty interests in living, associating with families and friends, and circulating in society without the well-established burdens imposed by CSORA," and that it deprives juveniles of their right to privacy by making information public that would otherwise be kept private. We find no due process violation.

¶ 33      Colorado courts have consistently held that adults convicted of crimes have no fundamental right to freedom from incarceration, *see id.*, and they have rejected due process challenges by sex offenders claiming that their liberty interests are violated by the Colorado Sex Offender Lifetime Supervision Act of 1998 (SOLSA), §§ 18-1.3-1001 to -1012, C.R.S. 2018. *See, e.g.*, *Dash*, 104 P.3d at 290 ("An adult criminal offender has no fundamental liberty interest in freedom from incarceration. Classification of sex offenders under

17

[SOLSA] neither creates a suspect class nor infringes upon a fundamental right.") (citation omitted); *Oglethorpe*, 87 P.3d at 134 (under rational basis test, SOLSA serves legitimate governmental interests in protecting public from untreated sex offenders); *see also People v. Torrez*, 2013 COA 37, ¶ 88 (collecting cases).

¶ 34 Although we are unaware of any Colorado cases addressing substantive due process challenges to the CSORA, we perceive no basis for applying a different standard to the claimed liberty interest challenge raised by C.M.D. Thus, we do not view C.M.D.'s claim as implicating a fundamental right, and we have already recognized that the CSORA's stated purpose of protecting the public is rational.

¶ 35 Nor can C.M.D. establish a substantive due process violation based on an asserted infringement of his right to privacy. An alleged invasion of privacy or resulting harm to reputation does not, without more, invoke due process protections. *See Paul v. Davis*, 424 U.S. 693, 701-12 (1976) (police chief's distribution of flyer identifying plaintiff as a shoplifter did not deprive plaintiff of right to privacy or implicate rights protected by due process provisions); *United States v. Juvenile Male*, 670 F.3d 999, 1012 (9th Cir. 2012) (juveniles' challenge to sex offender registration requirements as

violative of their right to privacy did not implicate any substantive due process rights; collecting cases); *see also* § 16-22-112(1) ("The general assembly finds that persons convicted of offenses involving unlawful sexual behavior have a reduced expectation of privacy because of the public's interest in public safety."); *People v. D.K.B.*, 843 P.2d 1326, 1330 (Colo. 1993) ("Neither this court nor the United States Supreme Court has held that a convicted person has a right to privacy in his arrest and conviction records.").

¶ 36 We do not agree with C.M.D. that we should find a privacy violation here because, as a juvenile, he has a greater expectation of privacy in his records than do adults. First, it is not necessarily true that juveniles have greater privacy rights than adults. *See People in Interest of J.M.*, 768 P.2d 219, 222 (Colo. 1989) (constitutional rights of adults and juveniles are not co-extensive, and state has broader authority to control and supervise the activities of children; collecting cases, including those involving privacy and procedural due process rights of minors). Second, while information regarding C.M.D. may in fact be available from other websites, the internet posting required under the CSORA is expressly limited to registered sex offenders who have been

19

"convicted as an adult" of two or more enumerated felonies. § 16-22-111(1)(c), C.R.S. 2018.

¶ 37　C.M.D. also appears to raise a procedural due process claim, arguing that "CSORA deprives juveniles of the right to present evidence or to be heard regarding their potential for rehabilitation." In *People in Interest of C.B.B.*, 75 P.3d 1148, 1151 (Colo. App. 2003), a division of this court rejected a similar argument, holding that a juvenile sex offender has no procedural due process right to a hearing to prove that he is not currently dangerous before being required to register as a sex offender under the CSORA. The division reasoned that, because the duty to register is triggered by a conviction, the offender's current level of dangerousness is immaterial under the statutory scheme. *Id.* at 1150-51; *see Conn. Dep't of Pub. Safety v. Doe*, 538 U.S. 1, 8 (2003) ("[Persons] who assert a right to a hearing under the Due Process Clause must show that the facts they seek to establish in that hearing are relevant under the statutory scheme.").

¶ 38　Similarly, here, C.M.D.'s potential for rehabilitation is irrelevant to the registration requirement under the statute as

currently written.[3] Nor is that requirement based on an "irrebuttable presumption" that juveniles generally have a high risk to reoffend and pose a threat to public safety, as C.M.D. argues. Rather, he was required to register as a sex offender based on his adjudication for the current offense, coupled with having a prior adjudication for a sex offense. In connection with his adjudication for the current offense, C.M.D. was afforded his due process rights to notice, counsel, and a hearing; and he does not allege that he was deprived of any of those rights when he was adjudicated for the prior offense.

¶ 39    We thus conclude that C.M.D. has not shown that the CSORA violates due process or fundamental fairness when applied to juveniles in the circumstances presented here.

---

[3] Because public safety, not rehabilitation, is the purpose of the registration requirement, C.M.D.'s cited studies and cases concluding that juveniles are particularly amenable to rehabilitation do not affect our resolution of the issue before us. Nevertheless, we note that, even though juveniles may generally have a high amenability to treatment, C.M.D. committed the current offense after he had already been in sex offender treatment.

## IV. Conclusion

¶ 40     We affirm the district court's order requiring C.M.D. to register as a sex offender.

JUDGE DAILEY and JUDGE LICHTENSTEIN concur.