The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader. The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
June 20, 2019

**2019COA89**

**No. 16CA1289, *People in Interest of T.B.* — Criminal Law — Sex
Offender Registration — Juveniles — Petition for Removal from
Registry; Constitutional Law — Eighth Amendment — Cruel
and Unusual Punishments**

The Colorado Sex Offender Registration Act (CSORA), sections

16-22-101 to -115, C.R.S. 2018, requires that juveniles who are

twice adjudicated for unlawful sexual behavior must register as sex

offenders for life. In this Eighth Amendment challenge to CSORA, a

division of the court of appeals, with one judge dissenting, holds

that CSORA's lifetime registration requirement is a punishment as

it applies to juveniles.

Based on this conclusion, the division remands the case to the

juvenile court for further proceedings to take further evidence and

make findings on the issue of whether CSORA's lifetime registration

requirement for juveniles constitutes cruel and unusual punishment.

COLORADO COURT OF APPEALS                                    **2019COA89**

Court of Appeals No. 16CA1289
City and County of Denver Juvenile Court No. 01JD1407
Honorable D. Brett Woods, Judge
Honorable Karen M. Ashby, Judge

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of T.B.,

Juvenile-Appellant.

ORDER REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division III
Opinion by JUDGE WELLING
Harris, J., concurs
Webb, J., dissents

Announced June 20, 2019

Philip J. Weiser, Attorney General, Joseph G. Michaels, Senior Assistant
Attorney General, Denver, Colorado, for Petitioner-Appellee

Johnson & Klein, PLLC, Gail K. Johnson, Katherine C. Steefel, Boulder,
Colorado, for Juvenile-Appellant

Elizabeth Logemann, Denver, Colorado, for Amicus Curiae Colorado Juvenile
Defender Center and Children's Rights

¶ 1    The Colorado Sex Offender Registration Act (CSORA), sections 16-22-101 to -115, C.R.S. 2018, requires that juveniles who are twice adjudicated for unlawful sexual behavior must register as sex offenders for life.  T.B. is one of those juveniles.  He now appeals the denial of his petition to deregister, arguing that the statute's requirement that he register as a sex offender for life for offenses that he committed as a juvenile constitutes cruel and unusual punishment.  This court has repeatedly rejected similar claims, each time on the basis that sex offender registration is not a punishment.  We, however, conclude that the lifetime registration requirement arising from juvenile adjudications constitutes a punishment and, therefore, remand the case for further proceedings to determine whether the punishment is unconstitutional.

I.    Background

¶ 2    In 2001, when T.B. was twelve years old, he was adjudicated for unlawful sexual contact, a class 1 misdemeanor if committed by an adult.  In 2005, he pleaded guilty to sexual assault.  Following the 2005 adjudication, he successfully completed probation and offense specific treatment.  He has no other criminal record.

¶ 3　　In 2010, T.B. filed a pro se petition to discontinue sex offender registration in both cases.  By checking a box on the petition, he represented that "I have successfully completed the terms and conditions of my sentence related to that offense.  I have not been subsequently convicted or adjudicated a juvenile delinquent for any offense involving unlawful sexual behavior."

¶ 4　　Following an evidentiary hearing, the juvenile court found that T.B. "has earned the right not to have to register" and "he is not a risk to sexually reoffend."  Then the court granted the petition as to the 2005 case but concluded that discontinuing registration was not permitted in the earlier case because T.B. had a subsequent sex offense adjudication (i.e., the 2005 case).

¶ 5　　Almost five years later, now twenty-six years old and represented by counsel, T.B. filed a second petition to discontinue registration.  This time he argued that lifetime registration violated due process and constituted cruel and unusual punishment.  Again, the juvenile court held a hearing.  In a written order relying primarily on *People in Interest of J.O.*, 2015 COA 119, the court rejected T.B.'s constitutional arguments and denied the petition.

¶ 6　　T.B. appeals that denial.

## II.     Procedural Bar

¶ 7      Relying on cases decided under Crim P. 35(c), the People assert that T.B.'s constitutional arguments are procedurally barred. We disagree.

### A.     Successiveness

¶ 8      Claims that could have been raised in a prior appeal are usually barred as successive.  *See Dunlap v. People*, 173 P.3d 1054, 1062 (Colo. 2007) (citing Crim. P. 35(c)); *People v. Vondra*, 240 P.3d 493, 495 (Colo. App. 2010) ("Defendant could have challenged the district court's factual findings and its conclusion that counsel was not ineffective on direct appeal, but chose not to do so.").  But we reject the Attorney General's successiveness argument for two reasons.

¶ 9      First, the Attorney General's successiveness argument assumes that cases decided under Crim. P. 35(c) should control this case.  Unsurprisingly, such cases apply the mandate of Crim. P. 35(c)(3)(VI)-(VII) ("The court shall deny any claim that was raised and resolved in a prior appeal" or "could have been presented in an appeal previously brought.").  But T.B. never sought relief under

Crim. P. 35(c). Nor, for that matter, do we see how he could have taken this approach in pursuit of discontinuing registration.

¶ 10 Second, while it is accurate that the juvenile court twice denied T.B.'s petition to discontinue the registration requirement and T.B. did not appeal from the first denial, the Attorney General's assertion that "[n]othing legal or factual has changed since the first ruling" is only partly true. The factual basis for seeking to discontinue registration was the same in both petitions — T.B. no longer posed a risk to sexually reoffend. But, as detailed in Part III.B.1.a below, the legal landscape involving juvenile sentencing in general and lifetime registration in particular has evolved substantially since T.B.'s first petition in 2010. *See, e.g.*, *Miller v. Alabama*, 567 U.S. 460, 479 (2012) (extending *Graham v. Florida*, 560 U.S. 48 (2010), and holding "that the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders" convicted of homicide); *Graham*, 560 U.S. at 73 (observing that just because a juvenile defendant "posed an immediate risk" at one point in his young life does not mean that he will "be a risk to society for the rest of his life"); *State in Interest of C.K.*, 182 A.3d 917, 932-33 (N.J. 2018)

4

(collecting cases issued since 2012 where state courts of last resort have held that lifetime registration and notification requirements for juvenile sex offenders are unconstitutional).

¶ 11    Accordingly, we conclude that there is no successiveness to T.B.'s petition and this appeal. *Cf. People v. Rainer*, 2013 COA 51, ¶ 34 (concluding that a juvenile's postconviction claim was not successive where it was based on *Graham*, which "established a new rule of substantive law which should be applied retroactively"), *rev'd on other grounds*, 2017 CO 50.

### B.    Abuse of Process and the Law of the Case Doctrine

¶ 12    The Attorney General characterizes T.B.'s appeal "as an abuse of process" because he "did not challenge or appeal the first order denying his motion." Of course, abuse of process may be asserted to prevent perpetual review. *Dunlap*, 173 P.3d at 1062. But below, the prosecution did not raise abuse of process. Thus, it is not available here. *See People v. Sherman*, 172 P.3d 911, 915 (Colo. App. 2006) ("In this case, the People did not plead or prove an abuse of process in the trial court. Hence, this affirmative defense is not available.").

¶ 13    The law of the case doctrine doesn't bar our review either. "Whether the law of the case . . . applies to bar the litigation of an issue is a question that we review de novo." *Jones v. Samora*, 2016 COA 191, ¶ 46.  That doctrine applies "to the decisions of an equal court or a different division of the same court."  *Vashone-Caruso v. Suthers*, 29 P.3d 339, 342 (Colo. App. 2001).  Thus, the juvenile court could've denied T.B.'s second petition on this basis alone. But because no other division of this court has addressed T.B.'s first petition, we are not so limited.  Having disposed of the Attorney General's procedural arguments, we now turn to the merits.

## III.    Analysis

¶ 14    T.B. contends that when applied to juveniles, automatic lifetime registration under CSORA for repeat offenders violates the Eighth Amendment's prohibition against cruel and unusual punishment.  But before discussing the constitutional implications of T.B.'s argument, it is helpful to briefly discuss the relevant portions of CSORA.

### A.    Treatment of Juveniles Under CSORA

¶ 15    Juveniles who have been adjudicated for unlawful sexual behavior must register as sex offenders.  § 16-22-103(4), C.R.S.

2018 ("The provisions of this article 22 apply to any person who receives a disposition or is adjudicated a juvenile delinquent based on the commission of any act that may constitute unlawful sexual behavior or who receives a deferred adjudication based on commission of any act that may constitute unlawful sexual behavior . . . ."). Juvenile sex offenders must adhere to the same registration requirements as adult sex offenders except that a juvenile's sex offender status is not posted on the Colorado Bureau of Investigation's website. § 16-22-111(1)(c), C.R.S. 2018 (providing that the Colorado Bureau of Investigation (CBI) website shall include information about sex offenders who "[have] been convicted as an adult" of specific offenses involving unlawful sexual behavior).

¶ 16    The registration requirement lasts for the rest of an individual's life or until the court enters an order discontinuing the registration requirement. *See* § 16-22-103. Before the court can enter such an order, an affected individual must file a petition to discontinue the registration requirement. *See* § 16-22-113, C.R.S. 2018. In determining whether to grant a petition to discontinue registration, the juvenile court is guided by a single criterion:

whether the person is "likely to commit a subsequent offense of or involving unlawful sexual behavior." § 16-22-113(1)(e).

¶ 17    Under CSORA, however, certain individuals are not even permitted to file a petition to discontinue the registration requirement. § 16-22-113(3). Included among those who are not permitted to file a petition are adults who have "more than one conviction or adjudication for unlawful sexual behavior." § 16-22-113(3)(c). This is problematic for T.B. because he is an adult whose record includes two juvenile adjudications for unlawful sexual behavior. So, T.B. is not entitled to petition to discontinue his registration requirement, even though he committed his crimes as a juvenile, unless the registration requirement, as applied to him, is unconstitutional. That is where we turn next.

### B.    Constitutional Challenge

¶ 18    We review constitutional challenges under the Eighth Amendment de novo. *People v. McCulloch*, 198 P.3d 1264, 1268 (Colo. App. 2008) ("[A]ppellate scrutiny of an Eighth Amendment challenge is de novo.").

¶ 19    The Eighth Amendment prohibits "cruel and unusual punishments," U.S. Const. amend. VIII, and "guarantees

8

individuals the right not to be subjected to excessive sanctions,'" *Roper v. Simmons*, 543 U.S. 551, 560 (2005). This right "'flows from the basic "precept of justice that punishment for crime should be graduated and proportioned"' to both the offender and the offense." *Miller*, 567 U.S. at 469 (citations omitted).

¶ 20 Analyzing any statute under the Eighth Amendment involves a two-part inquiry. First, a court must determine whether the statute imposes a punishment. *J.O.*, ¶ 30. If no punishment is imposed, we need not venture further because the Eighth Amendment is not implicated. *Id.* (If "requiring juvenile sex offenders to register does not constitute punishment under the Eighth Amendment, [the court] need not address whether registration is cruel and unusual.").[1] If, on the other hand, the statute does impose a punishment, the court must then decide whether that punishment is cruel and unusual. *Id.* So first, we must consider whether requiring a twice-adjudicated juvenile to register as a sex offender for life constitutes a punishment. We conclude it does.

---

[1] As discussed in more detail in Part III.B below, this is the step at which the juvenile court terminated its analysis.

### 1. Punishment

¶ 21  To decide whether a statute creates a punishment, a court must first "ascertain whether the legislature meant the statute to establish 'civil' proceedings." *Smith v. Doe*, 538 U.S. 84, 92 (2003) (quoting *Kansas v. Hendricks*, 521 U.S. 346, 361 (1997)).  This is so because if the legislature intended to impose punishment, "that ends the inquiry." *Id.*; *see also Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 169 (1963) (noting that "a detailed examination" of the statute "is unnecessary" where "the objective manifestations of congressional purpose indicate conclusively that the provisions in question can only be interpreted as punitive").

¶ 22  There is some textual indication in CSORA that the legislature recognized that the registration requirement may be punitive, at least as it applies to juveniles.  Specifically, among the factors a juvenile court must consider before exempting a juvenile from registering as a sex offender at sentencing is whether "the registration requirement . . . would be *unfairly punitive*" to the juvenile.  § 16-22-103(5)(a) (emphasis added).  This is certainly some recognition by the General Assembly that requiring a juvenile to register may be punitive (and in some circumstances, unfairly

10

so).  *See also Millard v. Rankin*, 265 F. Supp. 3d 1211, 1226 n.8 (D. Colo. 2017) ("The use of 'unfairly' suggests that at least some level of punishment is intended — just not an 'unfair' level.").  But still, on balance, we agree with the courts before us: CSORA's text does not explicitly create a punishment.  *See* § 16-22-112(1), C.R.S. 2018 ("[I]t is not the general assembly's intent that the information [found on the sex offender registry] be used to inflict retribution or additional punishment on any person convicted of unlawful sexual behavior . . . .").

¶ 23      But this does not end our inquiry.  Instead, we must "further examine whether the statutory scheme is 'so punitive either in purpose or effect as to negate'" the legislature's purportedly nonpunitive purpose.  *Smith*, 538 U.S. at 92 (quoting *Hendricks*, 521 U.S. at 361).  The Supreme Court cautioned that "only the clearest proof" will suffice to override that declared intent and transform a civil remedy into a criminal penalty.  *Id.* (quoting *Hudson v. United States*, 522 U.S. 93, 100 (1997)).

### a. Colorado Case Law and the Evolving Legal Landscape Regarding Juvenile Sentencing

¶ 24    Although our supreme court has not weighed in on the issue we are addressing today, we are not writing on a blank slate. Indeed, we recognize that on multiple occasions, and without exception, divisions of this court have concluded that CSORA's registration requirement is not a punishment. *See People in Interest of C.M.D.*, 2018 COA 172, ¶ 20; *J.O.*, ¶ 22; *People v. Carbajal*, 2012 COA 107, ¶ 37; *People v. Sowell*, 327 P.3d 273, 277 (Colo. App. 2011); *People v. Durapau*, 280 P.3d 42, 49 (Colo. App. 2011); *Fendley v. People*, 107 P.3d 1122, 1125 (Colo. App. 2004); *People v. Stead*, 66 P.3d 117, 120 (Colo. App. 2002), *overruled on other grounds by Candelaria v. People*, 2013 CO 47; *People in Interest of J.T.*, 13 P.3d 321, 323 (Colo. App. 2000); *People v. Montaine*, 7 P.3d 1065, 1067 (Colo. App. 1999); *Jamison v. People*, 988 P.2d 177, 180 (Colo. App. 1999).

¶ 25    Even though "[w]e are not obligated to follow the precedent established by another division," we give "such decisions considerable deference." *People v. Smoots*, 2013 COA 152, ¶ 20, *aff'd sub nom. Reyna-Abarca v. People*, 2017 CO 15.  And we do not

12

take the prospect of departing from this court's uniform precedent lightly, nor do we do so without careful consideration. But a confluence of developments in the law since our court first concluded that sex offender registration was nonpunitive twenty years ago persuades us to take a fresh look at the issue, particularly as it involves lifetime registration for juveniles.

¶ 26　First, the conclusion that CSORA's sex offender registration requirement is nonpunitive has come under recent scrutiny. *See Millard*, 265 F. Supp. 3d at 1225 ("[A]lthough panels of the Colorado Court of Appeals have declined to find SORA's provisions to be punitive, those cases have not engaged in the 'intent-effects' analysis used by the United States Supreme Court, and the Colorado Supreme Court has not addressed the question.").[2]

---

[2] We recognize that two divisions have in fact analyzed CSORA's registration requirement under the "intent-effects" factors set forth in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 169 (1963). *See People in Interest of C.M.D.*, 2018 COA 172, ¶¶ 22-23; *People v. Stead*, 66 P.3d 117, 121-23 (Colo. App. 2002), *overruled on other grounds by Candelaria v. People*, 2013 CO 47. We, however, respectfully disagree with the conclusions drawn by these divisions. *See People v. Moore*, 321 P.3d 510, 513 (Colo. App. 2010) ("One division of this court is not bound by the decision of another division."), *aff'd in part and vacated in part on other grounds*, 2014 CO 8.

Although we are in no way bound by the conclusion in *Millard*, the decision highlights that a growing number of states are revisiting whether sex offender registration requirements are punitive. *Id.* at 1224 (collecting cases from other jurisdictions where state courts have concluded that their states' registration requirements are punitive).

¶ 27    Second, and more importantly, the legal landscape involving juvenile sentencing in general has evolved considerably. Consider, for example, the United States Supreme Court's evolving jurisprudence on juvenile sentencing over the last fourteen years. In *Roper*, 543 U.S. at 555, 568, the Court concluded that imposing the death penalty on offenders who were under eighteen at the time of their capital offenses is unconstitutional. Then in *Graham*, the Court held that juveniles convicted of nonhomicide offenses could not constitutionally be sentenced to life without parole. 560 U.S. at 74. Finally, in *Miller*, the Court extended *Graham*, holding "that the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders" convicted of homicide. 567 U.S. at 479.

¶ 28 Likewise, our supreme court has recently addressed juvenile sentencing in other contexts and adopted these federal standards. *See, e.g.*, *Estrada-Huerta v. People*, 2017 CO 52; *Lucero v. People*, 2017 CO 49; *People v. Tate*, 2015 CO 42.

¶ 29 Third, the Eighth Amendment jurisprudence on lifetime sex offender registration for juveniles in particular has also evolved. A growing number of courts in other states have recently discussed the constitutionality of requiring a juvenile to register as a sex offender for life. *See, e.g.*, *In re A.C.*, 54 N.E.3d 952, 968 (Ill. App. Ct. 2016); *In Interest of T.H.*, 913 N.W.2d 578 (Iowa 2018); *C.K.*, 182 A.3d 917; *In re C.P.*, 967 N.E.2d 729 (Ohio 2012); *In re J.B.*, 107 A.3d 1 (Pa. 2014); *Vaughn v. State*, 391 P.3d 1086, 1098 (Wyo. 2017). And, unsurprisingly, many of these courts have drawn on the Supreme Court's evolving juvenile sentencing jurisprudence, emphasizing that juvenile offenders have greater prospects for rehabilitation. *See Miller*, 567 U.S. at 479 ("[J]uveniles have diminished culpability and greater prospects for reform . . . .").

¶ 30 Against this backdrop, it is our respectful assessment that the issue of whether the punitive effects of CSORA's lifetime registration

requirement for juveniles are sufficient to override its stated nonpunitive purpose warrants examination through fresh lenses.

### b. Applying the *Mendoza-Martinez* Factors

¶ 31     To determine if a statute's punitive effect overrides its declared civil intent, courts must consider the following: (1) whether the sanction involves an affirmative disability or restraint; (2) whether it has historically been regarded as a punishment; (3) whether the court imposes the sanction only upon a particular finding of scienter; (4) whether its operation will promote the traditional aims of punishment; (5) whether the behavior to which it applies is a crime; (6) whether there is a rational connection to a nonpunitive purpose; (7) whether it appears excessive in relation to the nonpunitive purpose.  *C.M.D.*, ¶ 22 (citing *Mendoza-Martinez*, 372 U.S. at 168-69).

¶ 32     When applied to juveniles, some of the factors support the conclusion that CSORA's lifetime registration requirement is not a punishment.  First, the registration requirement involves no affirmative disability or restraint, at least not directly.  *See id.* at ¶ 23 ("Unlike prison, probation, or parole, registration does not limit where offenders may live or where they may work, although local

16

ordinances may do so."). Second, there is no finding of scienter that is required before a juvenile is required to register under CSORA. Instead, juveniles are required to register unless the juvenile court determines "that the registration requirement . . . would be unfairly punitive and that exempting the person from the registration requirement would not pose a significant risk to the community." § 16-22-103(5)(a). This standard, however, does not require that the juvenile court evaluate a juvenile's state of mind before imposing the registration requirement. But we agree with the courts that have concluded that the scienter factor is of little value when determining whether a sex offender registration requirement is a punishment. *See Smith*, 538 U.S. at 105 (scienter factor is "of little weight in this case"); *T.H.*, 913 N.W.2d at 592 ("[T]he lack of a scienter requirement weighs in favor, albeit marginally, of finding the statute nonpunitive."); *State v. Eighth Judicial Dist. Court*, 306 P.3d 369, 387 (Nev. 2013) (same).

¶ 33 The remaining factors, however, support the conclusion that requiring automatic lifetime sex offender registration for juvenile offenses is a punishment.

17

¶ 34    First, the effect of requiring a juvenile to register as a sex

offender for life is reminiscent of traditional forms of punishment.

The dissemination of information that is then used to humiliate and

ostracize offenders can resemble forms of punishment that

historically have been used to ensure that offenders cannot live a

normal life.  *Smith*, 538 U.S. at 109 (Souter, J., concurring in the

judgment).  And when applied to juveniles, the dissemination of

information becomes even more characteristic of a punishment

because the information about a juvenile's criminal history would

not otherwise be publicly available.  *See* § 19-1-304(1), C.R.S. 2018

(setting forth limitations on public access to juvenile records); *see*

*also* Chief Justice Directive 05-01, Directive Concerning Access to

Court Records § 4.60(b)(4) (amended Oct. 18, 2016) (providing that

juvenile delinquency records are presumptively non-public).

¶ 35    It is true that the Supreme Court concluded that the

dissemination of accurate information about an individual's

criminal record is not a traditional form of punishment.  *Smith*, 538

U.S. at 98.  But in that case the Court was addressing the

consequences that befall *adult* sex offenders.  *Id.*  And, unlike

records of juvenile adjudications, records of adult convictions are presumptively public.

¶ 36   It is also true that T.B.'s status as a sex offender is not available on the sex offender registry that the Colorado Bureau of Investigation is required to make available on the internet.  *See* § 16-22-111(1)(c).  But that doesn't change the fact that anyone who inquires into T.B.'s background is given access to information that he or she would not otherwise be able to have.[3]  Moreover, any member of the public may request and obtain from his or her local law enforcement agency a list of sex offenders, which would include juvenile offenders such as T.B.  *See* § 16-22-112(2).  And at the hearing on his petition to deregister, T.B.'s parole officer testified that information about T.B.'s status as a sex offender could still show up in a background check and be the basis for T.B. losing an apartment or being fired from his job.  These public opprobrium

---

[3] In his reply in support of his petition, T.B. asserts, with supporting documents, that "a simple [G]oogle search of [T.B.'s] name reveals two private websites that have his home address, details of his adjudication, his age and date of birth, his physical description, and one site includes his picture."

consequences are often the sort of consequences associated with more traditional forms of punishment.

¶ 37    Further, as the Supreme Court has recognized, juveniles are different from adults for the purposes of the Eighth Amendment. *See Miller*, 567 U.S. at 471 ("Because juveniles have diminished culpability and greater prospects for reform, we explained, 'they are less deserving of the most severe punishments.'" (quoting *Graham*, 560 U.S. at 68)). This differentiation is particularly acute when considering the consequences that juveniles face when they are required to register as sex offenders. As Ohio's supreme court stated:

> With no other offense is the juvenile's wrongdoing announced to the world. Before a juvenile can even begin his adult life, before he has a chance to live on his own, the world will know of his offense. He will never have a chance to establish a good character in the community. He will be hampered in his education, in his relationships, and in his work life. His potential will be squelched before it has a chance to show itself.

*C.P.*, 967 N.E.2d at 741. CSORA imposes similar burdens on T.B. for offenses that he committed when he was a child; and these consequences resemble traditional forms of punishment.

20

¶ 38    Second, CSORA's lifetime registration requirement promotes

the traditional aims of punishment — "retribution and deterrence."

*Mendoza-Martinez,* 372 U.S. at 168. A statute begins to look more

retributive, and therefore punitive, when it imposes a sanction for

past conduct and when it does not provide a mechanism by which

an offender can "reduce or end registration based upon a showing

that the offender is no longer a threat to the community." *Starkey*

*v. Okla. Dep't of Corr.,* 305 P.3d 1004, 1028 (Okla. 2013); *cf. J.O.,*

¶ 29 (stating that among the distinctions that rendered the

Colorado's juvenile sex offender requirement nonpunitive was that

the juvenile in the case could "petition to discontinue registration

after successfully completing and being discharged from his

juvenile sentence or disposition"). CSORA does both with respect to

twice-adjudicated juveniles like T.B. T.B. was compelled to register

solely because of his past conduct and is still required to register

even though the juvenile court made an express finding that he is

no longer a danger to the community and is not likely to reoffend.

Moreover, as the federal district court in *Millard* recognized, the

Colorado Bureau of Investigation's own website states that one of

the goals of the sex offender registry is deterrence; and deterrence is

21

a traditional goal of punishment. *See Millard*, 265 F. Supp. 3d at 1229 ("The CBI website also states that the registry's goals are 'Citizen/Public Safety; Deterrence of sex offenders for committing similar crimes; and Investigative tool for law enforcement.'" (quoting Colorado Bureau of Investigation, *Registration*, https://perma.cc/HD4C-PYR4)).

¶ 39    Third, for juveniles, the behavior to which CSORA applies is already a crime.[4] For juveniles, CSORA's lifetime registration requirement sweeps in only those who have been adjudicated for committing past crimes — and, once the requirement to register for life is imposed, it does so without regard to whether he or she is likely to reoffend. And "[t]he fact that a statute applies only to behavior that is already, and exclusively, criminal supports a conclusion that its effects are punitive." *Doe v. State*, 189 P.3d 999, 1014 (Alaska 2008).

---

[4] For adults, CSORA's registration requirement extends beyond just those who have been convicted of sex offenses, and also reaches individuals who have been found not guilty by reason of insanity of certain sex offenses and are later released, *see* § 16-8-115(4), C.R.S. 2018; *see also People v. Durapau*, 280 P.3d 42, 49 (Colo. App. 2011) (applying CSORA's registration requirement to an adult who was found not guilty by reason of insanity of sexual assault).

¶ 40    The final two factors — whether there is a rational connection between the sanction and its stated nonpunitive purpose and whether the statute is excessive given that purpose — must be considered together. It cannot be disputed that there is a rational connection between CSORA's registration requirement and public safety. § 16-22-112(1). But we also must consider whether CSORA's lifetime registration requirement for juveniles is excessive given the important public safety justifications at issue. *Smith,* 538 U.S. at 97.

¶ 41    The question in this regard is not whether the legislature has chosen the best path to address its nonpunitive objective, but rather whether "the regulatory means chosen are reasonable in light of the nonpunitive objective." *Id.* at 105. Other courts have placed the greatest weight on this factor. *See T.H.,* 913 N.W.2d at 594 ("The final *Mendoza-Martinez* factor is the most significant of the seven . . . ."); *see also Wallace v. State,* 905 N.E.2d 371, 383 (Ind. 2009) (collecting cases stating the same). We agree with the courts that have viewed this as a weighty factor.

¶ 42    Indeed, a growing number of states have concluded that lifetime registration requirements similar to CSORA's are excessive

23

as applied to juveniles considering their nonpunitive purpose. *See Wallace*, 905 N.E.2d at 384 (The statute is excessive in relation to its public safety purpose because it "makes information on all sex offenders available to the general public without restriction and without regard to whether the individual poses any particular future risk."); *T.H.*, 913 N.W.2d at 596 ("[M]andatory [lifetime] registration for juveniles is excessive in light of its nonpunitive purpose."); *Commonwealth v. Baker*, 295 S.W.3d 437, 446 (Ky. 2009) ("Given . . . the fact that there is no individual determination of the threat a particular registrant poses to public safety, we can only conclude that [the statute requiring lifetime registration] is excessive with respect to the nonpunitive purpose of public safety."); *C.P.*, 967 N.E.2d at 742 (requiring lifetime sex offender registration for juveniles is excessive because it is not dependent on what is actually necessary to preserve public safety).

¶ 43    In contrast, other states have concluded that a sex offender registration statute is not excessive in relation to its nonpunitive purpose when it provides an individualized assessment of the risk that a juvenile will reoffend. *See In re Nick H.*, 123 A.3d 229, 247 (Md. Ct. Spec. App. 2015) (holding that a statute is not excessive

24

because it requires that the court make an individualized finding that registration is appropriate for the juvenile and the period is only for up to five years); *Eighth Judicial Dist. Court*, 306 P.3d at 387 (holding that a statute is not excessive because it limits sex offender registration for juveniles to only those crimes that pose the highest risk of reoffending); *In re Justin B.*, 747 S.E.2d 774, 783 (S.C. 2013) (holding that a statute is not excessive when a juvenile may petition to deregister after ten years); *Vaughn*, 391 P.3d at 1100 (holding that a statute is not excessive in relation to public safety purpose because an offender can apply for removal after ten years). Because CSORA prohibits T.B. from filing a petition to deregister, he is precluded from getting an individualized assessment related to whether registration is still necessary for the protection of the community.

¶ 44 We conclude that requiring a juvenile, even one who has been twice adjudicated for offenses involving unlawful sexual behavior, to register as a sex offender for life without regard for whether he or she poses a risk to public safety is an overly inclusive — and therefore excessive — means of protecting public safety. That overinclusiveness is exemplified in this case. The juvenile court

specifically found that T.B. "successfully addressed all issues related to his sexual offending behavior" and that he was "not likely to reoffend." But even in light of these findings, CSORA left the juvenile court powerless to consider — let alone grant — T.B.'s petition to deregister.

¶ 45 Under CSORA, there is simply no connection between the lifetime registration requirement for juveniles and the likelihood that the registrant will reoffend; the only criterion for lifetime registration is a finding that the juvenile has been twice adjudicated for unlawful sexual behavior. *See generally* § 16-22-103. In other words, once the requirement to register for life is imposed, it remains in effect without regard to whether the registrant is a continuing danger to the public. Thus, we conclude that because CSORA's lifetime registration requirement is not adequately tethered to the statute's stated nonpunitive purpose, the automatic lifetime registration requirement for juvenile offenders is excessive. And because CSORA's lifetime registration requirement is excessive in relation to its nonpunitive purpose when applied to juveniles, we conclude that it operates more like a punishment.

¶ 46     In short, the weightiest *Mendoza-Martinez* factors, including ones most pertinent to our determination, demonstrate that the punitive effects of CSORA's lifetime registration requirement as applied to juveniles override its stated nonpunitive purpose. As a result, we decline to adopt the conclusions of prior divisions of this court. *See People v. Washington*, 2014 COA 41, ¶ 27 ("To the extent that several divisions of this court have departed from *Strickland*'s above-noted statements regarding the applicable burden of proof, we are not obligated to follow those divisions.") (citations omitted); *People in Interest of S.N-V.*, 300 P.3d 911, 914 (Colo. App. 2011) (a division of the court of appeals is not bound by other divisions). Instead, we conclude that CSORA's lifetime registration requirement for juveniles is a punishment within the meaning of the Eighth Amendment.

¶ 47     But this still does not end the inquiry. Unlike prior divisions, because we have concluded that CSORA's lifetime registration requirement for juveniles constitutes a punishment, we must now consider whether the punishment is cruel and unusual.

## 2.   Is the Punishment Cruel and Unusual?

¶ 48    "Embodied in the Constitution's ban on cruel and unusual punishments is the 'precept of justice that punishment for crime should be graduated and proportioned to [the] offense.'" *Graham*, 560 U.S. at 59 (quoting *Weems v. United States*, 217 U.S. 349, 367 (1910)).  The juvenile court never reached the issue of whether the lifetime registration requirement is cruel and unusual on its face or as applied to T.B.  This is entirely understandable given this court's previously unbroken line of cases concluding that the registration requirement was not a punishment.  *See, e.g., J.O.,* ¶ 30 (declining to address whether a punishment is cruel and unusual because division concluded that registration requirement is not a punishment); *see also Patterson v. James*, 2018 COA 173, ¶ 40 (Published opinions of the court of appeals "are binding precedent for 'all lower court judges.'" (quoting C.A.R. 35(e))).

¶ 49    Whether a particular punishment is cruel and unusual is a fact-intensive inquiry.  *See Millard*, 265 F. Supp. 3d at 1231 (analyzing whether registration is cruel and unusual punishment by examining the specific effects that registration has on each offender); *cf. Anderson v. Colo., Dep't of Corr.*, 848 F. Supp. 2d 1291,

28

1296 (D. Colo. 2012) (denying motion for summary judgment because there were material facts in dispute as to whether restricting access to exercise is a cruel and unusual punishment). As such, it is best addressed by the trial court in the first instance.

¶ 50    At the hearing on his petition, T.B. submitted some evidence relevant to whether the lifetime registration requirement constituted a cruel and unusual punishment.  For example, T.B.'s parole officer testified about some of the hardships that he faces as a registrant. T.B. also put in the record numerous scholarly articles discussing whether the registration requirement is cruel and unusual as applied to juveniles.  *See, e.g.,* Amy E. Halbrook, *Juvenile Pariahs*, 65 Hastings L.J. 1 (2013); Human Rights Watch, *Raised on the Registry: The Irreparable Harm of Placing Children on Sex Offender Registries in the US* (May 2013), https://perma.cc/B3E9-AT5S.

¶ 51    Unsurprisingly, the People didn't rebut this evidence, as they were — quite understandably — relying on the contention that the juvenile court was bound to follow this court's decisions concluding that CSORA's lifetime registration requirement was not a punishment.  And, because it concluded that the lifetime registration requirement for juveniles was not a penalty, the

juvenile court didn't make any findings about whether it's cruel and unusual. *See, e.g., J.O.*, ¶ 30 ("[H]aving concluded that requiring juvenile sex offenders to register does not constitute punishment under the Eighth Amendment, we need not address whether registration is cruel and unusual.").

¶ 52     But neither of the parties nor the juvenile court had the guidance of this opinion during any of the prior proceedings, and, as a result, they had no notice that evidence and findings related to whether the punishment was cruel and unusual would be required to resolve this case and rule on T.B.'s petition to deregister. Thus, on remand, both T.B. and the People must be afforded an opportunity to present additional evidence on the issue of whether CSORA's lifetime registration requirement for juveniles constitutes cruel and unusual punishment. *See In re Marriage of Fabos*, 2019 COA 80, ¶ 57 ("[B]ecause the court and the parties did not have the guidance of [the supreme court's opinion] during the earlier hearing, both parties should be afforded the opportunity to present the district court with additional evidence and argument if either party wishes to do so."). Accordingly, we remand the case to the juvenile court to take further evidence and make findings on the

issue of whether CSORA's lifetime registration requirement for juveniles — either facially or as applied to T.B. — constitutes cruel and unusual punishment in violation of the Eighth Amendment.

### C. Irrebuttable Presumption

¶ 53 T.B. also argues that CSORA creates an impermissible irrebuttable presumption that a previous offender will offend again and, therefore, remains a danger to the community forever. Statutes that create irrebuttable presumptions are disfavored. *See Vlandis v. Kline*, 412 U.S. 441, 446 (1973); *People in Interest of S.P.B.*, 651 P.2d 1213, 1217 (Colo. 1982). The irrebuttable presumption doctrine springs from substantive due process, so we apply the rational basis test to determine the constitutionality of a statute unless the statute infringes upon a fundamental constitutional interest. *People v. Young*, 859 P.2d 814, 818 (Colo. 1993) ("[W]hen no fundamental right is implicated, the legislation is subject to evaluation for substantive due process purposes pursuant to the rational basis test . . . ."). In his briefing to this court, however, T.B. does not articulate what fundamental constitutional interest the registration requirement infringes on. Because of this and because we are reversing the trial court's order

based on our conclusion that CSORA's lifetime registration requirement constitutes a punishment, we decline to address T.B.'s argument that the automatic registration requirement imposes an unconstitutional irrebuttable presumption.

## IV. Conclusion

¶ 54 The juvenile court's order denying T.B.'s petition to discontinue the requirement that he register as a sex offender is reversed, and the case is remanded to the juvenile court for further proceedings consistent with this opinion.

JUDGE HARRIS concurs.

JUDGE WEBB dissents.

JUDGE WEBB, dissenting.

¶ 55    Every division of this court to have considered Eighth Amendment challenges to the mandatory lifetime registration requirement in the Colorado Sex Offender Registration Act (CSORA) has held that because this requirement does not constitute punishment — cruel and unusual or otherwise — it is constitutional.  This case tests the principle that one division of this court should give considerable deference to decisions of other divisions.

¶ 56    But because a court has determined that despite T.B.'s two prior sex offenses, he poses a low risk of sexually reoffending,[1] does this requirement still survive Eighth Amendment scrutiny?  True, a similar determination did not face any of those prior divisions.  Even so, nonpunitive purposes of CSORA other than safeguarding against recidivism, as recognized by prior divisions, show that the registration requirement is not an excessive sanction — and thus

_____

[1] During the hearing, the trial court said T.B. "is not a risk to sexually reoffend."  Then in its order, the trial court said T.B. "is unlikely to reoffend."  *See Reed v. Indus. Claim Appeals Office,* 13 P.3d 810, 813 (Colo. App. 2000) ("[I]f there is a conflict between oral and written findings, it is the written order that controls.").

33

punishment — under the Eighth Amendment.  And because relatively recent United States Supreme Court cases imposing constitutional limitations on juvenile sentencing deal with palpable punishments — the death penalty and life without possibility of parole — those cases provide little guidance in answering the preliminary question whether mandatory registration is punishment at all.  So, I discern insufficient reason to disavow our unanimous precedent.  Reaching an issue not addressed by the majority, I further conclude that the requirement does not violate due process, either on its face or as applied to T.B.

¶ 57     Both the majority's heavy reliance on out-of-state authority and T.B.'s contrary policy arguments are better addressed by the General Assembly or our supreme court.  Therefore, and with respect, I dissent.

## I.  This Appeal Is Not Procedurally Barred

¶ 58     I agree with the majority that T.B.'s constitutional arguments are not procedurally barred and note that the Attorney General does not dispute preservation.

## II. The Eighth Amendment Does Not Afford T.B. Relief

### A. Background

¶ 59    The majority correctly concludes that constitutional challenges under the Eighth Amendment are reviewed de novo. *People v. McCulloch*, 198 P.3d 1264, 1268 (Colo. App. 2008) ("[A]ppellate scrutiny of an Eighth Amendment challenge is de novo."). The majority's overview of general Eighth Amendment jurisprudence, summary of the relevant Colorado statutes, and explanation of how those statutes apply to T.B. are accurate and lead to the inescapable conclusion that T.B. is entitled to petition to discontinue his registration requirement if — and only if — the registration requirement, as applied to him, is cruel and unusual punishment.

¶ 60    Thus, the threshold question is whether this requirement constitutes punishment. In my view, it never did, and still does not.

### B. Court of Appeals Precedent

¶ 61    Citing ten published cases, the majority acknowledges that "without exception, divisions of this court have concluded that CSORA's registration requirement is not a punishment." *Supra*

¶ 24.  The majority does not cite contrary precedent from either our supreme court or the United States Supreme Court.  Nor have I found any.

¶ 62    Everyone agrees that one division of this court gives decisions of other divisions "considerable deference."  *People v. Smoots*, 2013 COA 152, ¶ 20, *aff'd sub nom. Reyna-Abarca v. People*, 2017 CO 15; *see also Williams v. Dep't of Pub. Safety*, 2015 COA 180, ¶ 143 (Berger, J., concurring in part and dissenting in part) ("[W]e should not easily cast aside a considered decision by a prior division of this court.").[2]  Because I adhere to the unanimous holdings of other divisions, the majority's string citation warrants a closer look.

---

[2] The destabilizing effect on trial courts and litigants of creating a conflict among published decisions of this court also favors consistency.  *See Greyhound Lines, Inc. v. County of Santa Clara*, 231 Cal. Rptr. 702, 704 (Cal. Ct. App. 1986) ("We acknowledge we are not bound by an opinion of another District Court of Appeal, however persuasive it might be.  We respect stare decisis, however, which serves the important goals of stability in the law and predictability of decision.") (citation omitted).  Under C.A.R. 35(e), "[o]pinions designated for official publication must be followed as precedent by all lower court judges in the state of Colorado."  But if conflicting published opinions exist, should a trial judge go with the majority of divisions, take the most recent pronouncement, or decide what is the better rule?  Of course, litigants can argue for any of these options.  And whatever choice the trial judge makes, the loser is compelled to appeal as a means of preserving the question until our supreme court speaks.

¶ 63     In *People in Interest of J.O.*, 2015 COA 119, ¶ 30, the division

held that "sex offender registration under section 16-22-103[,

C.R.S. 2018] — even as applied to juveniles — does not constitute

punishment."  The division relied on the following court of appeals

cases that have reached this conclusion.

- *Jamison v. People*, 988 P.2d 177, 180 (Colo. App. 1999) ("[T]he
  General Assembly did not intend the registration requirement
  to inflict additional punishment on a person convicted of a
  sexual offense.  Rather, such registration is required in order
  to aid law enforcement officials in investigating future sex
  crimes and to protect the public safety.").

- *People in Interest of J.T.*, 13 P.3d 321, 323 (Colo. App. 2000)
  ("The statutory duty to register as a sex offender is not a
  criminal punishment.").

- *People v. Stead*, 66 P.3d 117, 120 (Colo. App. 2002) ("[T]he sex
  offender registration statute does not disadvantage those
  offenders subject to its provisions; thus, registration is not
  punishment . . . .") (citation omitted), *overruled on other
  grounds by Candelaria v. People*, 2013 CO 47.

- *People v. Durapau*, 280 P.3d 42, 49 (Colo. App. 2011) ("The statutory scheme[ for sex offender registration] . . . indicates that registration is not punitive, but rather aids law enforcement in investigating future crimes and promotes public safety.").

- *People v. Sowell*, 327 P.3d 273, 277 (Colo. App. 2011) ("Laws imposing registration requirements on sex offenders [are] . . . not punishment . . . .").

- *People v. Carbajal*, 2012 COA 107, ¶ 37 ("Sex offender registration is not an element of a defendant's sentence, and the purpose of registration is not to punish the defendant, but to protect the community and to aid law enforcement officials in investigating future sex crimes.").

- *People v. Montaine*, 7 P.3d 1065, 1067 (Colo. App. 1999) ("Although the duty to register flows directly from defendant's conviction as a sex offender, it does not enhance defendant's punishment for the offense.").[3]

---

[3] Similar Colorado cases not cited in *J.O.* include *Fendley v. People*, 107 P.3d 1122, 1125 (Colo. App. 2004) ("The purpose of sex offender registration is not to inflict additional punishment on a person convicted of a sexual offense, but rather to aid law

¶ 64    The *J.O.* division explained that these cases "comport with the position of the Supreme Court" in *Smith v. Doe*, 538 U.S. 84, 93 (2003) (upholding Alaska Sex Offender Registration Act's constitutionality because statutory text's stated public safety objective was nonpunitive). *J.O.*, ¶ 22. And it pointed out that many of them recognize the General Assembly's expressly nonpunitive intent as to sex offender registration:

> The general assembly declares . . . that, in making this information available to the public, as provided in this section and section 16-22-110(6), it is not the general assembly's intent that the information be used to inflict retribution or additional punishment on any person convicted of unlawful sexual behavior or of another offense, the underlying factual basis of which involves unlawful sexual behavior.

§ 16-22-112(1), C.R.S. 2018.

---

enforcement officials in investigating future sex crimes and to protect the public safety."); *People v. Tuffo*, 209 P.3d 1226, 1230 (Colo. App. 2009) ("[T]he registration and notification requirements established in the SVP statute are intended to protect the community rather than punish the offender."); and *People in Interest of I.S.*, 2017 COA 155, ¶ 9 ("Because sex offender registration is not an element of a defendant's sentence, it is of no consequence to this appeal that the court later voided I.S.'s first sentence.").

¶ 65    Of course, this statute applies here just as it did in *J.O.*  And the Supreme Court has not retreated from *Smith*.

¶ 66    To dispel the majority's conclusion that the "issue of whether the punitive effects of CSORA's lifetime registration requirement for juveniles are sufficient to override its stated nonpunitive purpose warrants examination through fresh lenses," *supra* ¶ 30 , three of our prior cases deserve more than a summary.

¶ 67    In *Stead*, 66 P.3d at 121, the division applied the factors in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-169 (1963), to determine whether a defendant's placement on the internet sex offender list constituted punishment.  The division explained

> that the internet notification scheme may have the purpose or effect of a punishment in that it is triggered by a criminal offense, and it may require an additional finding of scienter. However, the scheme is not punitive in that it imposes no fine, confinement, or restraint; it has an expressly nonpunitive intent and purpose; it is not traditionally considered a type of punishment; and it is not excessive in relation to the public safety purposes it serves.

*Stead*, 66 P.3d at 123.  It concluded that "taken as a whole, the Internet posting provision of the sex offender statute does not constitute additional punishment."  *Id.*

¶ 68    Similarly, in *People v. Rowland*, 207 P.3d 890, 892 (Colo. App. 2009), the division applied the *Mendoza-Martinez* factors to section 16-13-903(3)(a), C.R.S. 2018, which requires that "the sexually violent predator's status as being subject to community notification shall be entered in the central registry of persons required to register as sex offenders created pursuant to section 16-22-110." Then the division held that the community notification requirements did not constitute punishment for the following reasons.

- "[C]ommunity notification does not impose an affirmative disability or restraint because it does not, on its face, restrict where an offender may live or work and does not alter either the length of incarceration or the parole eligibility date." *Rowland*, 207 P.3d at 893.

- "Notification to the affected community has not traditionally been considered punishment." *Id.* at 894.

- Even though community notification requires a finding of scienter, this "standing alone does not require treating a statute as punishment." *Id.*

41

- "[C]ommunity notification requirements may be like punishment because they have a deterrent effect . . . [but] this factor is inconclusive." *Id.*

- Although "[t]he behavior to which community notification attaches is a crime . . . '[the General Assembly] may impose both a criminal and a civil sanction in respect to the same act or omission.'" *Id.* (quoting *United States v. Ward*, 448 U.S. 242, 250 (1980)).

- "[T]he General Assembly's stated purpose is to protect the community. Informing and educating the community . . . are rationally connected to this purpose." *Id.*

- "The costs of notifying the target groups or specific communities does not appear to be excessive in light of the public safety purpose of the legislation and the controlled procedures for disseminating the information." *Id.*

¶ 69 Sexually violent predator designation is at least as impactful on the registrant as sex offender registration alone. *See* § 16-22-108(1)(d)(I), C.R.S. 2018 ("Any person who is a sexually violent predator . . . has a duty to register for the remainder of his or her

42

natural life . . . .").  Given the offenses that lead to SVP designation, greater approbation may well attach.  § 16-22-102(7), C.R.S. 2018.

¶ 70    Most recently, in *People in Interest of C.M.D.*, 2018 COA 172, the division analyzed these factors to conclude CSORA is not punishment as applied to a juvenile who — like T.B. — is subject to mandatory lifetime sex offender registration.  The division held that "the statute itself does not impose an 'affirmative disability or restraint.'  Unlike prison, probation, or parole, registration does not limit where offenders may live or where they may work, although local ordinances may do so."  *Id.* at ¶ 23 (quoting *Smith*, 538 U.S. at 99).  It also determined:

- "[T]he statute's operation does not 'promote the traditional aims of punishment — retribution and deterrence.'"  *Id.* (quoting *Mendoza-Martinez*, 372 U.S. at 168).  Rather, "[t]hose aims are primarily furthered by imposition of the sentence associated with the offense, not the associated registration requirement."  *Id.*

- "[A]lthough the conduct to which registration applies is already a crime, that crime carries its own punishment; any

punishment arising from a failure to register results from a proceeding separate from the original offense." *Id.*

- "[T]he stated and rational purpose of sex offender registration is to protect the public, and requiring registration is not excessive in light of this purpose." *Id.*

¶ 71 Because *Stead, Rowland,* and *C.M.D.* are particularly well reasoned, I decline even to revisit all but one of the *Mendoza-Martinez* factors. As to the last such factor — whether the sanction appears excessive in relation to the alternative purposes assigned — these cases did not evaluate protecting the public from an offender who, like T.B., had been determined to pose little risk of reoffending. Even so, T.B.'s argument that lifetime sex offender registration constitutes punishment because of this determination misses the mark in at least three ways.

¶ 72 First, T.B. disregards that "[t]he determination whether an offender is likely to reoffend is an inexact science." *State v. Yost,* 2008-Ohio-3682, ¶ 11, 2008 WL 2822291, *2 (Ohio Ct. App. July 24, 2008). Indeed, "there appears to be a consensus among experts that it is impossible to say that a person who has committed a sex offense — which by definition includes every person potentially

44

subject to registration under the act — poses no risk of reoffense."
*L.L. v. Commonwealth*, 20 N.E.3d 930, 938 (Mass. 2014). And here, the trial court did not have the benefit of expert testimony.

¶ 73     Second, T.B. mistakenly assumes that protecting the public from *him* is the only purpose for registration. As discussed in Part III.E below, the government also has an interest in assisting law enforcement. And law enforcement may legitimately choose to start investigating a sex offense with a known sex offender in the vicinity of the crime. For example, even if such an offender poses a very low risk of reoffending, the offender may be able to provide leads to other offenders who do pose such a risk.

¶ 74     Third, as also discussed Part III.E, providing notice to the public about a sex offender who has committed a crime requiring registration is informational. Given the inherent imprecision in predicting that offender's future criminality, informed citizens can — and should be allowed to — make their own risk assessments, for themselves and their vulnerable family members. *See Smith*, 538 U.S. at 104 (Sex offender registration "allow[s] the public to assess the risk on the basis of accurate, nonprivate information about the registrants' convictions.").

¶ 75    In light of these nonpunitive purposes, I reject the majority's conclusion that lifetime sex offender registration of an offender such as T.B. is an excessive sanction and thus punishment.

¶ 76    But does *Millard v. Rankin*, 265 F. Supp. 3d 1211, 1225 (D. Colo. 2017), cited by the majority as one of three reasons for discarding nearly two decades of this court's precedents, require a contrary conclusion?  Of course, as the majority admits, we are not bound by *Millard*.[4]  *See, e.g.*, *Monez v. Reinertson*, 140 P.3d 242, 245 (Colo. App. 2006) ("While we must follow the United States Supreme Court's interpretation of federal law, we are not bound by decisions of lower federal courts.").

¶ 77    More importantly, as the division in *C.M.D.*, ¶ 24, explained:

> Although we conclude that the CSORA is not punishment . . . we recognize that the federal court in *Millard*, on which C.M.D. relies, reached a contrary conclusion.  In that case, three registered sex offenders testified to specific adverse consequences they had suffered — including forced changes of residence, one man's exclusion from his own children's school, and difficulties in obtaining or maintaining employment — as a result of the registration requirement.  The court observed that such evidence of "actual adverse

---

[4] An appeal has been filed in *Millard* with the Tenth Circuit, case number 17-1333, docketed September 21, 2017.

consequences" of sex offender registration was relevant to the plaintiffs' Eighth Amendment claim. 265 F. Supp. 3d at 1222. After acknowledging the non-punitive legislative intent of the CSORA, the court concluded that, based on the testimony, the statute's effects on the three plaintiffs before it were clearly punitive.

¶ 78    By contrast, here the trial court made *no* findings about how registration impacted T.B. As to the evidence of adverse effects on T.B., he expressed pride in his employment as a fast-food restaurant manager, but believed he was being held back by the continued obligation to register as a sex offender. And his probation officer testified that T.B. "can't seem to get a better job. He can't seem to get an apartment because of the scrutiny that he's under when he applies." This evidence falls short of *Millard*, even were I to accept its rationale.

C.  Differences Between Juveniles and Adults

¶ 79    T.B. urges us to view whether lifetime sex offender registration for juveniles constitutes punishment through the prism of Supreme Court cases like *Graham, Miller*, and *Roper*. And the majority identifies these cases as a second reason for going against this court's unanimous precedent. But the division in *J.O.* rejected this

very argument. *See J.O.*, ¶¶ 2, 21-30 (Lifetime sex offender registration did not violate J.O.'s constitutional rights even though juvenile offenders are "different from adults in their diminished culpability and greater prospects for reform." (quoting *People v. Tate*, 2015 CO 42, ¶ 28)); *see also C.M.D.*, ¶ 20 (agreeing with *J.O.*).

¶ 80 True, unlike the juvenile in *J.O.*, T.B. cannot petition to discontinue registration. Still, the amount of time during which a sex offender is required to register does not transform the registration requirement into punishment. *See Sowell*, 327 P.3d at 277 ("Nor does modification of this requirement from an indefinite to a lifelong duty to register transform [sex offender] registration into a punishment."). And cases that have reached the opposite conclusion — such as *In re C.P.*, 967 N.E.2d 729, 741 (Ohio 2012) — were decided in jurisdictions where sex offender registration requirements *are* considered punishment. *See State v. Williams*, 952 N.E.2d 1108, 1112 (Ohio 2011) ("[A]ll doubt has been removed: [Ohio's sex offender registration statute] is punitive.").

¶ 81 As well, reliance on *Roper*, *Graham*, and *Miller* to show an Eighth Amendment violation is circular. These cases all focus on the differences between children and adults in imposing

48

punishments. *See People v. Gutierrez,* 324 P.3d 245, 262 (Cal. 2014) ("At the core of *Miller*'s rationale is the proposition — articulated in *Roper,* amplified in *Graham,* and further elaborated in *Miller* itself — that constitutionally significant differences between children and adults 'diminish the penological justifications for imposing the harshest sentences on juvenile offenders.'" (quoting *Miller,* 567 U.S. at 472)). Yet, recognizing that "children are less culpable and more capable of change than adults is relevant in determining whether the harshest punishment is appropriate, but it does not establish that sex offender registration is punishment . . . ." *In re J.C.,* 221 Cal. Rptr. 3d 579, 592 (Cal. Ct. App. 2017)); *see also State v. Martin,* 61 N.E.3d 537, 543 (Ohio Ct. App. 2016) ("The flaw in Martin's argument is that he is trying to equate a death sentence or a life sentence without the possibility of parole with having to register as a sex offender for life. It is illogical to do so and, as such, we decline to extend the reasoning in the three United States Supreme Court cases to the facts present here.").

¶ 82    So, affording a repeat juvenile sex offender the leniency espoused in these cases bootstraps leniency as an answer to the

punishment question. But as shown above, at least in Colorado, sex offender registration is not a punishment.

¶ 83     As the majority points out, in six states Eighth Amendment jurisprudence as applied to juvenile sex offenders has evolved. And this trend, according to the majority, is a third reason for breaking ranks with other divisions of this court. But in one of those states — Illinois — its supreme court has not yet spoken. And these cases were available to the *C.M.D.* division for its consideration.

¶ 84     As well, in other equally recent cases, the majority's decision to treat lifetime registration as punishment continues to be rejected. *See, e.g., J.C.*, 221 Cal. Rptr. 3d at 593 ("Because J.C. has failed to establish that juvenile sex offender registration is punishment, his claim that registration is cruel and unusual punishment must fail."); *State v. Boche*, 885 N.W.2d 523, 532 (Neb. 2016) ("Because we conclude the lifetime registration requirements imposed on [the juvenile] are not punishment, his argument that these registration requirements amount to cruel and unusual punishment must necessarily fail."); *In Interest of Justin B.*, 799 S.E.2d 675, 681 (S.C. 2017) ("The requirement that . . . juveniles who commit criminal

sexual conduct must register as a sex offender and wear an electronic monitor is not a punitive measure . . . .").

¶ 85     This mix of cases hardly presents a tidal wave that we must ride or risk being washed away. Instead, absent an overarching constitutional right — which the Supreme Court has not identified — this difference of opinion illustrates federalism. For this reason, the majority's holding would be a choice better made by our supreme court. *See People v. Herrera*, 39 Cal. Rptr. 3d 578, 586 (Cal. Ct. App. 2006) ("[W]e . . . are unwilling to blaze a new trail after the courts have followed a single path for decades. If appropriate, any such change of direction is better left to the Supreme Court.").

¶ 86     On the one hand, having discerned no punishment, I need not address whether the purported punishment is cruel and unusual. But on the other hand, because the majority finds an Eighth Amendment violation, it does not address T.B.'s alternative due process claim. So, I must address that claim as well.

### III. T.B.'s Due Process Rights Were Not Violated

¶ 87     T.B. next contends lifetime sex offender registration for repeat juvenile sex offenders violates due process. Although his opening

brief does not clearly distinguish between procedural and substantive due process, because he raised both principles below, I interpret his appellate arguments as also encompassing both of them, but discern no constitutional violation under either principle.

## A. Standard of Review and Law

¶ 88    The Constitution guarantees that the government shall not deprive any person of an interest in "life, liberty or property without due process of law." U.S. Const. amend. XIV, § 1. "This clause imposes two different constraints on governmental decisions: procedural due process and substantive due process." *M.S. v. People*, 2013 CO 35, ¶ 9; *see Turney v. Civil Serv. Comm'n*, 222 P.3d 343, 352 (Colo. App. 2009) ("Procedural due process . . . requires fundamental fairness in procedure and is met if the party is provided with notice and an opportunity to be heard. Substantive due process . . . guarantees that the state will not deprive a person of those rights for arbitrary reasons regardless of how fair the procedure is.") (citation omitted); *Salazar v. Am. Sterilizer Co.*, 5 P.3d 357, 371 (Colo. App. 2000) ("Procedural due process requires that a party be given notice and an opportunity to be heard. It also requires a fundamental fairness in procedure. Substantive due

process requires that legislation be reasonable and not arbitrary or capricious.") (citation omitted).

¶ 89    Whether lifetime sex offender registration violates due process is a question of law subject to de novo review. *See People in Interest of C.J.*, 2017 COA 157, ¶ 25.

### B.  T.B. Has Not Identified a Liberty Interest or a Fundamental Right

¶ 90    I start with this issue because "[t]he requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *M.S.,* ¶ 10 (quoting *Bd. of Regents of State Colls. v. Roth,* 408 U.S. 564, 569 (1972)).  In other words, absent a "denial of a liberty or property interest . . . the government does not have to provide procedural due process." *Id.*

¶ 91    Likewise, under substantive due process, a statute that infringes on a fundamental right must be narrowly tailored to serve a compelling state interest. *Jones v. Samora,* 2016 COA 191, ¶ 72.  But in the absence of a fundamental right, the applicable standard of review for a substantive due process challenge is rational basis. *Ferguson v. People,* 824 P.2d 803 (Colo. 1992).  And rational basis

review "is especially deferential to legislative choice." *Culver v. Ace Elec.*, 971 P.2d 641, 646 (Colo. 1999).

¶ 92    T.B. argues that CSORA "harms the reputation of juvenile registrants by branding them as sex offenders and making public juvenile offenses that otherwise would be kept private." But he cites neither United States Supreme Court nor Colorado authority, and I have not found any, recognizing reputation as a protected liberty interest. To the contrary, "mere injury to reputation, even if defamatory, does not constitute the deprivation of a liberty interest." *Conn. Dep't of Pub. Safety v. Doe*, 538 U.S. 1, 6-7 (2003); *accord Watso v. Colo. Dep't of Soc. Servs.*, 841 P.2d 299, 306 (Colo. 1992) ("[I]njury to reputation alone, absent some additional injury to a right or status established by state law, does not constitute a deprivation of any liberty or property interest . . . .").

¶ 93    Nor does T.B. cite any binding federal precedent — much less any Colorado authority — recognizing reputation as a fundamental right. This lack of authority makes sense because courts should be "reluctant to recognize new rights as fundamental." *Evans v. Romer*, 882 P.2d 1335, 1359 (Colo. 1994), *aff'd*, 517 U.S. 620

(1996); *see also Zutz v. Nelson*, 601 F.3d 842, 850 (8th Cir. 2010) ("[T]here is no fundamental right to one's own reputation . . . .").

¶ 94    Fundamental rights are liberties "deeply rooted in this Nation's history and tradition." *Moore v. City of East Cleveland*, 431 U.S. 494, 503 (1977). A right to be free from sex offender registration because it infringes on a juvenile's reputation does not meet this standard. *See Vaughn v. State*, 391 P.3d 1086, 1096 (Wyo. 2017) ("[W]e conclude that juveniles who have been convicted of serious sex offenses do not have a fundamental right to be free from the registration and notification requirements . . . even if those require information concerning them and their offenses to be disseminated in limited ways and to potentially remain in place for life."); *see also In re A.C.*, 54 N.E.3d 952, 962 (Ill. App. Ct. 2016) ("Respondent cites no controlling case law establishing that a 'deeply rooted' fundamental right is violated by juveniles being subjected to the registration or notification provisions at issue."); *Justin B.*, 799 S.E.2d at 681 ("A delinquent juvenile's reputation may be in greater need of protection than the reputation of an adult convicted of a felony sex crime, but the juvenile's interest in that reputation is still neither liberty nor property.").

¶ 95    In sum, given the lack of precedent recognizing a juvenile's reputation as a liberty interest or a fundamental right, I decline to do so here.

    C.  The Irrebuttable Presumption Doctrine Does Not Apply

¶ 96    T.B.'s due process arguments — both procedural and substantive — assume that lifetime sex offender registration for repeat juvenile sex offenders rests on an irrebuttable presumption of "ongoing, lifetime recidivism."  *See In re R.M.*, No. 666 EDA 2014, 2015 WL 7587203, at *25 (Pa. Super. Ct. Feb. 13, 2015) ("[A]n irrebuttable presumption claim generally challenges both the statute, i.e. the substance, and the procedure employed by the statute.").  This assumption does not survive scrutiny.

¶ 97    True enough, "[s]tatutes creating permanent irrebuttable presumptions have long been disfavored under the due process clauses of the Fifth and Fourteenth Amendments to the United States Constitution."  *People in Interest of S.P.B.*, 651 P.2d 1213, 1217 (Colo. 1982).  And when an irrebuttable presumption has been used, the "most common remedy applied is requiring the decision maker to permit rebuttal and thus to allow exceptions to general rules."  *Id.*

¶ 98   But in *S.P.B.*, our supreme court explained that a "threshold requirement for invocation of this remedy" is that the "case must be appropriate for review under a heightened standard of scrutiny." *Id.* In other words, again a fundamental right or liberty interest must be at stake.

¶ 99   This threshold requirement was met in *In re J.B.*, 107 A.3d 1, 19 (Pa. 2014), on which T.B. relies. There, the court explained that in Pennsylvania, "juvenile offenders have a protected right to reputation." *Id.* Unsurprisingly, given this right, the court held that sex offender registration based on a "presumption of recidivism" violates juvenile offenders' due process rights. *Id.* at 19-20. But as explained above, Colorado does not recognize reputation as a fundamental right or a liberty interest.

¶ 100   Even if Colorado did recognize such an interest, however, lifetime sex offender registration under CSORA is not based on an irrebuttable *presumption* of future recidivism. Rather, it is based on *demonstrated* past recidivism — juveniles who have been adjudicated of more than one sex offense. *See Doe v. Moore*, 410 F.3d 1337, 1342 (11th Cir. 2005) ("Appellants argue that the Sex Offender Act violates substantive due process by creating an

irrebuttable presumption of dangerousness," but "the Sex Offender Act here does not turn on the dangerousness of the offender, merely the fact that he or she was convicted.").

¶ 101   CSORA does not say anything about a juvenile's risk of recidivism or the juvenile's current level of dangerousness.  To the contrary,

> [t]he Colorado sex offender registry includes only those persons who have been required by law to register and who are in compliance with the sex offender registration laws.  Persons should not rely solely on the sex offender registry as a safeguard against perpetrators of sexual assault in their communities.  *The crime for which a person is convicted may not accurately reflect the level of risk.*

§ 16-22-110(8), C.R.S. 2018 (emphasis added).

¶ 102   Because the four cases on which T.B. relies all depend on irrebuttable presumptions, expressly or by necessary implication, they are distinguishable.  *See Vlandis v. Kline*, 412 U.S. 441 (1973) (out-of-state applicants could never become residents for tuition purposes); *Stanley v. Illinois*, 405 U.S. 645 (1972) (unwed fathers could never be fit parents); *Bell v. Burson*, 402 U.S. 535 (1971) (fault warranted suspension of driving privileges); *City & Cty. of Denver v. Nielson*, 194 Colo. 407, 572 P.2d 484 (1977) (masseuse of

58

different sex than client will engage in illegal sex acts).  Not so with CSORA.

¶ 103    For these reasons, I decline to apply the irrebuttable presumption doctrine to sex offender registration for repeat juvenile sex offenders.

### D.  Lifetime Sex Offender Registration for Repeat Juvenile Sex Offenders Does Not Violate Procedural Due Process

¶ 104    T.B. argues that his due process rights were violated because had "judicial discretion and individualized assessment been allowed . . . [his] petition for removal from the sex-offender registry would have been granted."  I read this argument as invoking procedural due process.

¶ 105    Possibly recognizing the lack of a protected liberty interest, T.B. instead relies on his "property interests by authorizing law-enforcement agencies to charge $75 for initial registration and $25 for subsequent registrations."  But "the protections offered by procedural due process 'are not as stringent when a deprivation of property is involved as opposed to a deprivation of a personal liberty.'"  *Colo. Ins. Guar. Ass'n v. Sunstate Equip. Co.*, 2016 COA

64, ¶ 54 (quoting *Dewey v. Hardy*, 917 P.2d 305, 308 (Colo. App. 1995)) (*cert. granted* Oct. 31, 2016).

¶ 106    T.B. cites no authority that a registration fee — as opposed to a penalty — implicates due process.  It does not.  *See Mueller v. Raemisch*, 740 F.3d 1128, 1133 (7th Cir. 2014) ("A fee is compensation for a service provided to, or alternatively compensation for a cost imposed by, the person charged the fee.  By virtue of their sex offenses the plaintiffs have imposed on the State of Wisconsin the cost of obtaining and recording information about their whereabouts and other circumstances.  The $100 annual fee is imposed in virtue of that cost, though like most fees it doubtless bears only an approximate relation to the cost it is meant to offset. A fine, in contrast, is a punishment for an unlawful act; it is a substitute deterrent for prison time and, like other punishments, a signal of social disapproval of unlawful behavior."); *see also Kuhndog, Inc. v. Indus. Claim Appeals Office*, 207 P.3d 949, 950 (Colo. App. 2009) ("The imposition of penalties constitutes a deprivation of property and, therefore, implicates employer's due process rights.").

¶ 107    Unlike a penalty, under CSORA, "[t]he amount of the fee shall reflect the actual direct costs incurred by the local law enforcement agency in implementing the provisions of this article." § 16-22-108(7)(a).  And failure to pay the registration fee does not result in criminal liability:

> The local law enforcement agency may waive the fee for an indigent person.  For all other persons, the local law enforcement agency may pursue payment of the fee through a civil collection process or any other lawful means if the person is unable to pay at the time of registration.  A local law enforcement agency shall accept a timely registration in all circumstances even if the person is unable to pay the fee at the time of registration.

§ 16-22-108(7)(b).

¶ 108    But even if T.B. has asserted a protected property interest, his due process argument ignores Colorado and Supreme Court precedent that a juvenile "has no procedural due process right to a hearing to prove a fact immaterial to the state's statutory scheme before being required to register as a sex offender." *People in Interest of C.B.B.*, 75 P.3d 1148, 1151 (Colo. App. 2003).

¶ 109    In *C.B.B.*, like here, the juvenile argued that he was denied procedural due process because CSORA "does not provide a hearing

61

to determine whether an offender is currently dangerous." *Id.* at 1149. The division disagreed. It held that a sex offender's "current level of dangerousness is immaterial under [CSORA] because his duty to register was triggered solely by his conviction." *Id.* at 1151; *see also Conn. Dep't of Pub. Safety*, 538 U.S. at 7 (determining that procedural due process is satisfied where Connecticut sex offender registration is based "on an offender's conviction alone — a fact that a convicted offender has already had a procedurally safeguarded opportunity to contest").

¶ 110 Especially in light of *Connecticut Department of Public Safety*, I follow the division in *C.B.B.* and conclude that T.B. was not denied procedural due process.

### E. Lifetime Sex Offender Registration for Juveniles Does Not Violate Substantive Due Process

¶ 111 Finally, I reject T.B.'s arguments that lifetime sex offender registration for juveniles is unconstitutional on its face and as applied to him because it violates substantive due process.

¶ 112 Under the rational basis test, a statute is presumed to be constitutional; the burden is on the party challenging the statute to establish beyond a reasonable doubt that the statutory provision

lacks a rational relationship to a legitimate governmental interest.
*Pace Membership Warehouse v. Axelson*, 938 P.2d 504, 506 (Colo.
1997).  In conducting this review, "we do not decide whether the
legislature has chosen the best route to accomplish its objectives."
*Dean v. People*, 2016 CO 14, ¶ 13.  Instead, "[o]ur inquiry is limited
to whether the scheme as constituted furthers a legitimate state
purpose in a rational manner."  *Id.*

¶ 113    As the United States Supreme Court has explained, "[s]tates
are not required to convince the courts of the correctness of their
legislative judgments" under a rational basis review.  *Minnesota v.
Clover Leaf Creamery Co.*, 449 U.S. 456, 464 (1981).  "Rather, 'those
challenging the legislative judgment must convince the court that
the legislative facts on which the classification is apparently based
could not reasonably be conceived to be true by the governmental
decisionmaker.'"  *Id.* (quoting *Vance v. Bradley*, 440 U.S. 93, 111
(1979)); *see FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (1993)
(A rational basis "may be based on rational speculation
unsupported by evidence or empirical data."); *Bradley*, 440 U.S. at
108 ("Even if the classification involved . . . is to some extent both
underinclusive and overinclusive, and hence the line drawn by

63

Congress imperfect, it is nevertheless the rule that in a case like this 'perfection is by no means required.'" (quoting *Phillips Chem. Co. v. Dumas Indep. Sch. Dist.*, 361 U.S. 376, 385 (1960))). As everyone would agree, this test "imposes an admittedly enormously high bar for challengers seeking to invalidate perceived unconstitutional statutes." *Parker v. Webster Cty. Coal, LLC,* 529 S.W.3d 759, 771 (Ky. 2017).

¶ 114    Under these principles, "[a] statute can be stricken under the rational basis standard only if there exists no reasonably conceivable set of facts to establish a rational relationship between the statute and a legitimate governmental purpose." *Lobb v. Indus. Claim Appeals Office*, 948 P.2d 115, 118 (Colo. App. 1997). Importantly, while a statute might create "a harsh result in some instances," this "does not mean that the statute fails to meet constitutional requirements under the rational basis standard." *Id.*

¶ 115    So, the sole question I must answer is this: Does lifetime sex offender registration for repeat juvenile sex offenders rationally relate to a legitimate governmental purpose? My answer is "yes."

¶ 116    According to the Colorado Bureau of Investigation website,[5] the goals of sex offender registration include enhancing public safety, deterring sex offenders from committing similar crimes, and providing an investigative tool for law enforcement.  *See Curtiss v. People*, 2014 COA 107, ¶ 8 (Sex offender registration "aid[s] law enforcement officials in investigating future sex crimes."); *Jamison*, 988 P.2d at 180 ("[R]egistration is required in order to aid law enforcement officials in investigating future sex crimes and to protect the public safety.").

¶ 117    T.B. does not argue — nor could he — that requiring lifetime sex offender registration for some adult offenders lacks a rational relationship to these goals.  *See People v. Harper*, 111 P.3d 482, 485 (Colo. App. 2004) ("[S]ex offenders have a 'frightening and high' risk of recidivism, *see McKune v. Lile*, 536 U.S. 24, 34 (2002); *Smith v. Doe*, 538 U.S. 84, 103 (2003) . . . .").

¶ 118    Instead, he argues that the analysis changes when the offender was a juvenile at the time of the offenses.  This is so, he continues, because lifetime registration for a juvenile is at odds with

---

[5] Colorado Bureau of Investigation, *Registration,* https://perma.cc/HD4C-PYR4.

the juvenile justice system's rehabilitative purpose and it is "overinclusive because it impacts many juveniles . . . who are unlikely to sexually offend as adults." As to purported overinclusiveness, according to T.B., research shows that "juveniles adjudicated for sex offenses (even multiple sex offenses) are not likely to sexually reoffend as adults."[6]

¶ 119    To be sure, the "overriding goal of the Children's Code [is] to provide guidance and rehabilitation to an adjudicated delinquent child in a manner consistent with the best interests of the child and the protection of society, 'rather than fixing criminal responsibility, guilt, and punishment.'" *S.G.W. v. People*, 752 P.2d 86, 91 (Colo. 1988) (quoting *People in Interest of T.M.*, 742 P.2d 905, 907 (1987)). Yet, to the extent that the Children's Code affords special treatment, T.B. received it in the underlying adjudication and sentencing. *See*

---

[6] *See* Amy E. Halbrook, *Juvenile Pariahs*, 65 Hastings L.J. 1, 13 (2013) ("This research shows that juveniles adjudicated delinquent for sex offenses have extremely low rates of recidivism generally and even lower rates of sexual reoffense."); Human Rights Watch, *Raised on the Registry: The Irreparable Harm of Placing Children on Sex Offender Registries in the US* 28 (May 2013), https://perma.cc/B3E9-AT5S ("[I]f a history of child sexual offending is used to predict a person's likelihood of future sex offending, that prediction would be wrong more than nine times out of ten.").

*United States v. Juvenile Male*, 670 F.3d 999, 1014 (9th Cir. 2012) ("[A]dequate procedural safeguards at the conviction stage are sufficient to obviate the need for any additional process at the registration stage.").

¶ 120 Further, requiring lifetime registration for certain juveniles aligns with the goal of the juvenile justice system to protect society. *See In re J.W.*, 787 N.E.2d 747, 759 (Ill. 2003) ("Given the shift in the purpose and policy of the Juvenile Court Act to include the protection of the public from juvenile crime and holding juveniles accountable, as well as the serious problems presented by juvenile sex offenders, we find no merit to J.W.'s claim that requiring him to register as a sex offender for life is at odds with the purpose and policy of the Juvenile Court Act."); *In re M.A.H.*, 20 S.W.3d 860, 864 (Tex. App. 2000) ("Although we are aware that the juvenile justice system is arranged with a special emphasis on the welfare of the child, sex offenders present special problems. In answer, the legislature enacted the registration . . . requirements in an apparent attempt to strike a balance between the goals of providing for the well-being of the child and protecting society from both the adult as well as the youthful sex offender.").

¶ 121    And in any event, the Children's Code is a legislative creation, not implementation of a constitutional mandate.  So, the General Assembly remained free to depart from some of its broader objectives in treatment of repeat juvenile sex offenders.

¶ 122    To the extent that research suggests *some* such juveniles subject to the lifetime registration requirements might not present a significant risk for recidivism, rational basis review in response to a facial challenge does not demand "mathematical exactitude."  *City of New Orleans v. Dukes*, 427 U.S. 297, 303 (1976); *see People v. Parker*, 70 N.E.3d 734, 755-56 (Ill. App. Ct. 2016) ("While not every offender is necessarily inclined to commit another sex offense, subjecting that group as a whole to certain restrictions does serve a legitimate state purpose which the SORA Statutory Scheme is rationally related to achieving, even though it may not be 'finely-tuned' to do so." (quoting *People v. Avila-Briones*, 49 N.E.3d 428, 451 (Ill. App. Ct. 2015))).  Thus, the "mere failure of a governmental regulation to allow all possible and reasonable exceptions to its application is not sufficient to render the regulation unconstitutional."  *Colo. Soc'y of Cmty. & Institutional Psychologists, Inc. v. Lamm*, 741 P.2d 707, 712 (Colo. 1987); *see People v. Pollard*,

54 N.E.3d 234, 247 (Ill. App. Ct. 2016) ("Although the [sex offender registration] Statutory Scheme may be overinclusive, thereby imposing burdens on offenders who pose no threat to the public because they will not reoffend, there is a rational relationship between the registration, notification, and restrictions of sex offenders and the protection of the public from such offenders.").

¶ 123    But what about T.B.'s argument that whatever may be true about other juveniles, *his* risk of sexually reoffending has been determined to be low and possibly zero?  As discussed in Part II.B above, this argument ignores reasons beyond recidivism for requiring lifetime juvenile sex offender registration, such as deterring potential future offenders other than the recidivist[7] and providing an investigative tool for law enforcement.  These interests remain unchanged regardless of the sex offender's age or likelihood

---

[7] T.B. conflates "general deterrence" of all citizens with "special deterrence" of the particular offender.  *See People v. Martin*, 897 P.2d 802, 804 (Colo. 1995); *see also United States v. Under Seal*, 709 F.3d 257, 265 (4th Cir. 2013) ("[A]ny number of governmental programs might deter crime without imposing punishment.  To hold that the mere presence of a deterrent purpose renders such sanctions 'criminal' would severely undermine the Government's ability to engage in effective regulation." (quoting *Smith v. Doe*, 538 U.S. 84, 102 (2003))).

to reoffend.  *See J.W.*, 787 N.E.2d at 758 ("The public interest is to assist law enforcement in the protection of the public from juvenile sex offenders.  The Registration Act as applied to a 12-year-old child serves that public interest by providing police officers ready access to information on known juvenile sex offenders."); *Vaughn*, 391 P.3d at 1096 ("In protecting the public, [juvenile sex offender registration] aids in the prevention, avoidance, and investigation of future sex offenses."); *see also People v. Stevens*, 91 N.Y.2d 270, 274-75 (N.Y. 1998) (identifying legislation's goals to protect the community from the dangers of recidivism by sex offenders, and to assist law enforcement in the investigation and prosecution of sex offenders); *Doe v. Miller*, 886 A.2d 310, 316 (Pa. Commw. Ct. 2005) ("Information on class members is gathered in order to protect against future offenses and to facilitate future investigations, thereby enhancing public safety and welfare."), *aff'd*, 901 A.2d 495 (Pa. 2006).

¶ 124    The General Assembly also could have concluded that the public has a legitimate interest in knowing the location of repeat sex

offenders — regardless of their likelihood of recidivism.[8]  *See Smith*,

538 U.S. at 101 ("The State makes the facts underlying the offenses

and the resulting convictions accessible so members of the public

can take the precautions they deem necessary before dealing with

the registrant.").  That the public may overreact to this information

is not a rational basis defect.  *Cf. State v. Imburgia*, 2007-Ohio-390,

¶ 26, 2007 WL 274419, *4 (Ohio Ct. App. Feb 1, 2007) ("[T]he

courts have no control over public reaction and any reprisal by a

citizen certainly cannot be considered a 'penalty' which the court

has imposed.").  And apart from enforcing constitutional limitations,

"we may not substitute our judgment for that of the [General

Assembly] as to the wisdom of the legislative choice."  *People v.

Zinn*, 843 P.2d 1351, 1354 (Colo. 1993).

¶ 125    Given all of this, I reject T.B.'s claim that lifetime sex offender

registration for repeat juvenile sex offenders violates substantive

---

[8] The legislature need not have expressed this reason in enacting sex offender registration legislation to survive rational basis scrutiny.  *See United States v. Osburn*, 955 F.2d 1500, 1505 (11th Cir. 1992) ("[A]ny rationale Congress 'could' have had for enacting the statute can validate the legislation, regardless of whether Congress actually considered that rationale at the time the bill was passed.").

due process on its face or as applied to him, even in light of the district court's determination on his risk of reoffending. T.B.'s arguments in favor of allowing all juveniles to petition for discontinuing registration raise policy considerations better weighed by the General Assembly. *See Ruybalid v. Bd. of Cty. Comm'rs*, 2017 COA 113, ¶ 18 ("[M]atters of public policy are better addressed by the General Assembly," not this court.) (*cert. granted* Apr. 30, 2018); *In re Welfare of C.D.N.*, 559 N.W.2d 431, 435 (Minn. Ct. App. 1997) ("[W]e respectfully invite the legislature to review the prudence of requiring all juveniles adjudicated for criminal sexual conduct to register as predatory sexual offenders.").

## IV. Conclusion

¶ 126    I would affirm the order.